Jenkins, Justice.
'“Dalton Spread Workers Dnion,” a voluntary labor organization consisting of spread workers including “practically all of the employees of the O’Jay Spread Company,” and four individuals “as members of said organization and for themselves as individuals,” filed a petition against the company, praying a temporary restraining order, injunction, and different amounts of damages to each plaintiff, on account of breaches of a written labor contract of collective bargaining, signed by the company and by one of the indvidual plaintiffs and two others as representatives of the union and its members. It was alleged that the petition was filed as a class bill, not only in behalf of the plaintiffs, but for others similarly situated, who might intervene; and that all have a community of interest under the contract and in its performance. The contract, dated July 1, 1937, recited that it was “to go into effect immediately upon the reopening of the Dalton, Georgia plant” of the company, and was to “remain in effect only for a period of three months from this date” (September 30, 1937); that all employees “may return to their respective positions when operations are resumed at said plant, without prejudice or discrimination,” interference, restraint, or coercion “because of union activities or membership therein;” that “during the life of this agreement” the wage scale in the amounts specified to each of the named employees “shall be in effect;” that there “shall be no strike or lockout;” that any difference would be settled by arbitrators in the manner stated; that “this is not to be construed as a contract of continuous employment for the persons herein named or any other persons; and the . . company does not obligate itself to furnish employment to any of its employees for any period of time, definite or indefinite;” that the company “shall have the right to *509 decrease or increase its force of employees as business conditions may justify, and operate its plant and during such times as business conditions warrant, provided employees beneficiaries of this agreement shall be given work when business conditions warrant the operation of the plant; and shall have the right to discharge any employee for just cause, reserving the right of the employees to appeal the matter to arbitration;” and that “employees parties to this agreement shall be given preference in employment, all conditions being equal.” It was further alleged that the company breached and violated the provisions of the contract allowing employees to return to their positions without discrimination, by refusing to take back to work and employ eight named employees, including three of the plaintiffs, by publicly announcing that it would employ no member of the union, and threatening to blacklist all of its employees who persisted in remaining members; and further violated and breached its contract in that it “failed and refused and now fails and refuses to pay the wages in the wage scale, as set out” in the contract, to plaintiffs and other employees; that “without just cause or excuse [it] failed and refused and now fails and refuses to continue the employ in its plant of said plaintiffs as provided in said contract, and in violation of said contract, although each has at all times and now been ready, able, and willing to comply with . . their part of the contract, and each has offered and now offers to perform the respective services under said contract and at a rate of pay provided therein;” that there was discrimination and interference with one of the plaintiffs and seven other named employees, and a threat that unless they desisted from continuing membership in the union they would be discharged, and said named employees “were discharged because they continued [such] membership;” and that the defendant refused the tender of the plaintiffs to arbitrate the alleged violations of the contract. One of the four individual plaintiffs “ charged as actual damages . . the sum of $112.50 . . due her . . by reason of the facts that she would have earned said sum from July 8, 1937, until September 14, 1937, at the rate of $12.50 per week, which was . . her average wages under her employment by the defendant, if the defendant would have permitted her to work under the contract as it should have done,” and she has been unable to find other employment. Each of the other individual plaintiffs *510 claimed damages “by reason of the identical facts” set out as to the first plaintiff, but' in'varying amounts according to the wage scale in the contract. The union claims as damages $305.37, paid for expenses, according to an itemized list, to six “agents and representatives,” none of whom are alleged to have been members of the union or employees of the company, in going from Atlanta to Dalton and remaining there on several occasions for several days, '“for the purpose of conferring” with the officer in charge of the company, “and in an effort to adjust the differences and violations of said contract on the part of the defendant company, and further for the purpose of offering arbitration under the terms and conditions of said contract . . and that the expenditure of said expenses [was] necessary by the continued actions of the defendant company in its breach of said contract.” It was further charged that “the defendant company has actually removed its plant to Calhoun, Georgia, for the specific purpose of avoiding performance of the terms of the contract . . and that said defendant company closed its plant at Dalton, Georgia, on or about September 4, 1937;” and that “in addition to removal of said plant . . the defendant is hypothecating, hiding, and concealing accounts receivable and products of its manufacture, namely bed-spreads, with a firm known as Ostraw <fe Jacobs of New York City, New York, for the purpose of removing a greater portion of the assets of the defendant out of the jurisdiction of this court and so that the defendant company will render itself financially unable to meet the judgment of this court and the claims of your petitioners;” that in said firm “the same M. Jacobs, hereinbefore referred to in this suit” as the officer acting for the defendant, “is a partner,” and “these actions on the part of the defendant company are all for the purpose of hindering, delaying, and defrauding your petitioners and others similarly situated;” that “the damages each plaintiff and other parties similarly situated will sustain are irreparable and not subject to computation in exact dollars and cents, in that it is difficult and well nigh impossible to determine the exact number of hours each employee would work under the terms of the contract or the exact number of pieces each employee would have made;” and that the intervention of equity would avoid the result otherwise of a multiplicity of separate law actions by each of the employees. The prayers as amended are: that the defendant be restrained *511 and enjoined from violating the contract; that it be restrained and enjoined from changing the status or assets of its business to the extent that it will not be answerable to the judgment of this court; that the union, the individual plaintiffs, and other persons similarly situated who may intervene, recover the separate items of damage, claimed as stated; and that the plaintiffs have such other and further relief as may be proper.
The defendant filed general and special demurrers to the petition as amended, upon the grounds that the petition showed no cause of action or matter for equitable relief; that under the contract and the averments of the petition, the plaintiffs had a full, adequate, and complete remedy at law; that there was a misjoinder of parties plaintiff and of causes of action, and the petition was multifarious, in that there was no common right in the plaintiffs; that the petition sought to enforce separate and distinct causes of action, to which separate defenses could be asserted; that the Dalton Spread Workers Union is not a legal entity capable under the law of maintaining the suit; that it was not shown whether or when the plant had begun operation, or was in operation, before or during the periods in which the individual plaintiffs claimed loss of wages; that the item of expenses sought to be recovered by the union was not authorized by the contract, the persons to whom the amounts were paid not being shown to have been employees of the company or members of the union; and that the averments with reference to the change of the defendant’s entity and secretion of assets were a mere conclusion without issuable facts.
On August 25, 1937, the petition was filed, requiring the defendant to appear on the fourth Monday in October, and a temporary restraining order was granted against a violation of the contract and any change in the status of the business covered by the contract, or the assets, which might render the defendant not answerable to the judgment of the court. On September 24, 1937, the court entered orders, overruling the demurrers to the amended petition, and continuing the restraining order “to October 18, 1937, expiration date of the contract.” The contract, dated July 1, 1937, provided that it “shall remain in effect only for a period of three months.” The only exception was to the overruling of the demurrers; and neither side excepted to the continuance of the restraining order to the date stated, now expired.
*512 “Members of a numerous class may be represented by a few of the class in litigation which affects the interest of all.” Code, § 37-1002. “Where there is one common right to be established by or against several, and one is asserting the right against many, or many against one, equity will determine the whole matter in one action.” § 37-1007. Under these codified equitable rules, a few of the members of an unincorporated association, such as a trade union, may sue in the name or in behalf of all the members, where all by virtue of their membership have a common right or interest in the contract or other subject-matter of the suit. The fact that the individual interests of the plaintiffs may in some respects differ, or that all do not have an interest in all the matters embraced in such an equitable suit, will not, as to individual plaintiffs, render the petition multifarious or subject to attack for misjoinder of parties or causes of action, if each of the plaintiffs has an essential interest common to all, with a common connection and right against the defendant. Equity, taking jurisdiction, will determine all of the matters in controversy and grant appropriate relief, equitable or legal, so ás to do complete justice between the parties. Bates v. Houston, 66 Ga. 198 (3), 202; Grand Chapter Order Eastern Star v. Wolfe, 172 Ga. 346, 350 (157 S. E. 301); Blaisdell v. Bohr, 68 Ga. 56 (2), 61; Macon & Birmingham Ry. Co. v. Gibson, 85 Ga. 1 (11 S. E. 442, 21 Am. St. R. 135); Portwood v. Huntress, 113 Ga. 815 (39 S. E. 299); White v. North Georgia Electric Co., 128 Ga. 539 (58 S. E. 33); East Atlanta Land Co. v. Mower, 138 Ga. 380 (3), 385 (75 S. E. 418); Brown v. Wilcox, 147 Ga. 546 (94 S. E. 993); Brumby v. Board of Lights & Waterworks, 147 Ga. 592, 597 (95 S. E. 7); Knox v. Reese, 149 Ga. 379 (100 S. E. 371); Hermann v. Mobley, 172 Ga. 380 (2, 3) (158 S. E. 38). The instant equitable petition, brought by a voluntary labor organization, consisting of employees of the defendant company, and certain individual employee members of the organization for themselves as individuals and for other employee members similarly situated, and seeking injunction, recovery of wages as damages to the individual plaintiffs, and expenses to the organization, on account of an alleged breach by the company of a written labor contract of collective bargaining, stated a cause of action good against the general demurrer. It was not, as to the individual members of the organization, suing for all, subject to the spe *513 cial demurrers on grounds of misjoinder, multifariousness, or duplicity. It was, however, in its joinder of the organization with such individual members, subject to these special grounds.
Except as provided by statute in cases of injunction and damages for counterfeiting labels or trade-marks of unincorporated associations or unions of working men (Code, §§ 106-101 to 106-104, inclusive), it is the rule in this State that a suit can not be brought in the name or in behalf of an unincorporated association, but a suit to enforce or protect a right inuring by virtue of membership in such an association must be brought in the name or in behalf of all the members. Mutual Life Ins. Co. v. Inman Park Presbyterian Church, 111 Ga. 677 (36 S. E. 880); Thurmond v. Cedar Spring Baptist Church, 110 Ga. 816 (36 S. E. 321); Western & Atlantic R. Co. v. Dalton Marble Works, 122 Ga. 774 (50 S. E. 978); Barbour v. Albany Lodge, 73 Ga. 474; Faisan v. Adair, 144 Ga. 797, 798 (87 S. E. 1080, Ann. Cas. 1918A, 243); Jones v. Watson, 63 Ga. 679; 25 R. C. L. 72-74, §§ 28-31; 63 C. J. 659, § 7, 703, § 86; 5 C. J. 1365, § 102; 7 C. J. S. 30, § 1(b), 82, § 35. The petition was thus subject to special demurrer, on the additional ground that the plaintiff union, as a voluntary association, was not a legal entity capable under the law of maintaining the suit. The fact that the “national labor relations act” of July 5, 1935 (49 St. 449, 450) and other prior Federal labor acts (title 29, IT. S. Code Ann., 1936 Supp., pp. 14-35) recognize the existence and rights as entities of unincorporated associations and labor organizations in dealings with employers and in specific relief through Federal agencies as provided by such acts, would not operate to change the rule just stated, in a suit such as this, involving merely an application of general legal and equitable principles and relief to a contract of collective bargaining, without relief under any Federal act.
The amended petition was subject also to grounds of special demurrer, in failing to state when the defendant’s plant reopened, after a closing on account of labor disturbances referred to in the alleged contract and petition. The contract, dated July 1, 1937, in terms providing that it was to “go into effect immediately upon the reopening” of the defendant’s plant, and the individual plaintiffs claiming subsequent loss of earnings on account of a breach of this contract, but only in indirect terms alleging that the plant had *514 reopened at all before the periods claimed, the defendant was entitled to a specific averment as to the time of reopening.
Only upon the grounds and for the reasons stated, it was error to overrule the general and special demurrers to the petition.

Judgment reversed.

All the Justices concur, except Eussell, C. J., who took no part in the decision of the case.