ALLEN-BRADLEY LOCAL No. 1111, UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA and others, Appellants, vs. WISCONSIN EMPLOYMENT RELATIONS BOARD and another, Respondents.

*November 9, 1940—March 11, 1941.*

*Max E. Geline* of Milwaukee, for the appellants.

For the respondent Wisconsin Employment Relations Board there were briefs by the *Attorney General, James Ward Rector,* deputy attorney general, and *Newell S. Boardman,* assistant attorney general, and oral argument by *Mr. Boardman.*

For the respondent Allen-Bradley Company there were briefs by *Lines, Spooner & Quarles,* attorneys, and *Leo Mann, Maxwell H. Herriott,* and *W. J. McGowan* of counsel, all of Milwaukee, and oral argument by *Mr. Mann.*

A brief was also filed for the Wisconsin State Federation of Labor by *Padway, Goldberg & Tarrell* of Milwaukee, as *amicus curiæ.*

The following opinion was filed January 7, 1941:

ROSENBERRY, C. J. Upon this appeal no question is raised as to the constitutionality of the Wisconsin Employment Peace Act, sec. 111.01 *et seq.,* Wis. Stats. 1939, pursuant to which the proceeding under consideration was had, except that it is in conflict with the National Labor Relations Act, 49 U. S. Stats. at L. 449, 29 USCA, § 151 *et seq.* Stated in the language of the brief, the appellants contend,—

"That the Wisconsin act and the national act both regulate the same subject; that the Wisconsin act is so inconsistent with and in conflict with the national act, in the public policy each act seeks to enforce and in their major terms and provisions, that the two acts cannot consistently stand together, in so far as applicable to interstate commerce."

Appellants further contend that the finding of the board that the fourteen strikers were guilty of unfair labor practices, is unconstitutional because it is so in conflict with regulations of the national act governing the employee status of the fourteen strikers that the employee sections of the two acts cannot consistently stand together. While appellant used the term "unconstitutional," their argument is that the state law can have no application to a manufacturer subject to the National Labor Relations Act because the jurisdiction of the National Labor Relations Act has pre-empted the field of labor relations in cases where the employer is carrying on an industry in interstate commerce.

We enter upon an examination of the contentions of the plaintiffs and the arguments made in support thereof fully aware that we are dealing with one of the most difficult as well as delicate questions presented to the courts of this country, to wit, the delimitation of the power of the state and the federal government over a matter which is subject to some extent to their concurrent jurisdiction. The line of demarcation between the federal and state power is not a straight line. It is not only irregular but it is subject to change. The extent of state jurisdiction in some fields depends upon whether the field has been occupied by federal authority. Areas not thought to be within the scope of federal power originally may be brought within it by economic and social changes. Neither the state nor the federal constitutions change but the subject matter to which they are applied changes and so a new and different result is reached by the application of constitutional principles. See *Home Bldg. & Loan Asso. v. Blaisdell* (1933), 290 U. S. 398, 54 Sup. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1519, note, "Governmental powers in peace-time emergency."

Yet "the distinction between what is national and what is local in the activities of commerce is vital to the maintenance of our federal system." *National Labor Relations Board v.*

*Jones & Laughlin Steel Corp.* (1936) 301 U. S. 1, 30, 57 Sup. Ct. 615, 81 L. Ed. 893.

We shall first consider the purpose and scope of the National Labor Relations Act for the reason that wherever it applies, it excludes state action from the occupied field. Upon this proposition there is no disagreement. We shall also endeavor to determine when and under what circumstances it applies in a particular case.

While appellants recognize the fact that the National Labor Relations Act was enacted to remove burdens and prevent obstruction to the free flow of interstate commerce, they continually assert that the act confers substantive rights upon individual workers and the unions into which they are organized. Upon the basis of this proposition they argue that if there is any difference in the provisions of the two acts as to what are unfair labor practices or the remedies which may be applied by the boards, there is a necessary and fatal repugnancy between the acts.

The supreme court of the United States in *National Labor Relations Board v. Jones & Laughlin Steel Corp., supra,* speaking of interstate commerce, said:

"Undoubtedly the scope of this power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government. (p. 37.)

"The theory of the act is that free opportunity for negotiation with accredited representatives of employees is likely to promote industrial peace and may bring about the adjustments and agreements *which the act in itself does not attempt to compel.*[1] . . . The act does not interfere with the normal exercise of the right of the employer to select its employees

---

[1] Here and throughout the opinion italics are by the writer.

or to discharge them. The employer may not, under cover of that right, intimidate or coerce its employees with respect to their self-organization and representation, and, on the other hand, the board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than such intimidation and coercion." (pp. 45, 46.)

It is manifest from these and other declarations of the United States supreme court in the consideration of the provisions of the National Labor Relations Act that the federal government can proceed only so far with the regulation of labor relations as is necessary to protect interstate commerce, remove burdens from it, and prevent obstructions to it. The more study one gives to the National Labor Relations Act, the more he is moved to admire the consummate skill with which it was drafted for the declared purpose of regulating and protecting interstate commerce, and yet at the same time leaving the field of proper state action unrestricted so far as possible. A reading of the cases which have arisen in the course of the administration of the act leads one to the conclusion that such defects as exist are defects of administration rather than defects in the law itself. The conduct of employees, although not denominated "unfair labor practices" by the act, is considered important in determining the character of the employers' acts by the National Labor Relations Board as well as the courts.

In the declaration of policy contained in the National Labor Relations Act, it is said:

"It is hereby declared to be the policy of the United States *to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and*

*conditions of their employment or other mutual aid or protection."* 29 USCA, § 151.

By the National Labor Relations Act the board is given two principal functions: The first is defined by sec. 9, which as enacted is headed "Representatives and elections;" the second is defined by sec. 10, which as enacted, is headed "Prevention of unfair labor practices." In sec. 9 the board is empowered after appropriate investigation and hearing to certify the name or names of representatives for collective bargaining of an appropriate unit of employees. 29 USCA, § 159. By sec. 10 the board is authorized to prevent by order, after hearing, and by a further appropriate proceeding in court, unfair labor practices as defined in sec. 8 of the act. 29 USCA, § 160. The power of the board to certify under sec. 9 the name or names of representatives for collective bargaining is not involved in this proceeding. It is apparent, however, from a consideration of the provisions of sec. 9 that the right to determine and certify the name or names of a person or persons who shall represent an appropriate unit of employees for the purpose of collective bargaining, is vested exclusively in the board.

In *American Federation of Labor v. National Labor Relations Board* (1940), 308 U. S. 401, 60 Sup. Ct. 300, 84 L. Ed. 347, the United States supreme court had before it for determination the question whether a certification made by the board pursuant to the provisions of sec. 9 was subject to review by the circuit court of appeals of the proper circuit. The court held (p. 411):

"The conclusion is unavoidable that congress, as the result of a deliberate choice of conflicting policies, has excluded representation certifications of the board from the review by federal appellate courts authorized by the Wagner Act except in the circumstances specified in sec. 9 (d). [Upon a petition for the enforcement or review of an order under sec. 10 (c), an order made pursuant to sec. 9 (c) may be reviewed.]"

By sec. 10 (a) it is provided that—

"The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in sec. 8) *affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise."* 29 USCA, § 160 (a).

By sec. 10 (b) it is provided that whenever it is charged that any person has engaged in or is engaging in any such unfair labor practice, the board or any agent or agency designated by the board for such purpose, *shall have power to issue and cause to be served upon such person its complaint, stating the charges, etc.* 29 USCA, § 160 (b).

By sec. 10 (c), it is provided:

". . . If upon all the testimony taken the board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the board shall state its findings of fact and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practices, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this act." 29 USCA, § 160 (c).

Under the provisions of the act, the power to forbid unfair labor practices and to require reinstatement of employees is vested exclusively in the board and this power may not be affected by any other means of adjustment or prevention. It seems clear from these provisions that the right sought to be vindicated is the right to have interstate commerce free from burdens and obstructions. This is apparent not only from the language of the act but from the decision of the United States supreme court in *Amalgamated Utility Workers v. Consolidated Edison Co.* (1940) 309 U. S. 261, 60 Sup. Ct. 561, 84 L. Ed. 738. In that case, the union which had been a party to a labor dispute sought to have the Consolidated

Edison Company and its affiliated companies adjudged in contempt for failure to comply with certain requirements of the decree made in the case to which it was a party. The court of appeals denied the application on the ground that "petitioner had 'no standing to press a charge of civil contempt, if contempt has been committed.' "

The supreme court of the United States cited excerpts from the committee reports of both houses of congress and said (p. 269):

"We think that the provision of the National Labor Relations Act conferring exclusive power upon the board to prevent any unfair labor practice, as defined—a power not affected by any other means 'of prevention that has been or may be established by agreement, code, law, or otherwise'— necessarily embraces exclusive authority to institute proceedings for the violation of the court's decree directing enforcement. The decree in no way alters, but confirms, the position of the board as the enforcing authority. *It is the board's order on behalf of the public that the court enforces.* It is the board's right to make that order that the court sustains. *The board seeks enforcement as a public agent, not to give effect to a 'private administrative remedy.'* Both the order and the decree are aimed at the prevention of the unfair labor practice. If the decree of enforcement is disobeyed, the unfair labor practice is still not prevented. The board still remains as the sole authority to secure that prevention."

The court affirmed the decision of the circuit court of appeals. See also *Fur Workers Union, Local No. 72 v. Fur Workers Union* (App. D. C. 1939), 105 Fed. (2d) 1.

It is obvious that the purpose of the National Labor Relations Act is to promote the free flow of interstate commerce by the prevention of unfair labor practices as defined in the act. The regulation of interstate commerce is the constitutional basis of the power of congress over labor relations. Prior to the adoption of the National Labor Relations Act and the decision of the United States supreme court sustain-

ing it, many persons supposed labor relations to be a subject reserved to the states by the Tenth amendment to the constitution of the United States and that it was beyond the competency of congress to deal with the subject. No doubt it is because of that fact that the act so meticulously delimits the power and authority of the labor board to matters which substantially affect interstate commerce, that being a subject over which congress has, when it is exercised, exclusive jurisdiction. Hence congress does not seek in the National Labor Relations Act to deal with labor relations generally. It deals with labor relations only so far as in its opinion it is necessary to protect interstate commerce from being impeded or obstructed by unfair labor practices on the part of employers.

The act prescribes a procedure for the protection and enforcement of the right of employees for self-organization, to bargain collectively, and to engage in collective activities as enumerated in sec. 7, for the purpose of protecting interstate commerce and to that end it confers large discretionary power upon the National Labor Relations Board. The rights enumerated in sec. 7 were in existence before the act was passed. If the act were to be repealed these rights would still exist. No one would more promptly assert that fact than the representatives of labor.

In *Amalgamated Utility Workers v. Consolidated Edison Co., supra,* the supreme court of the United States, referring to sec. 7 of the act, said (p. 263) :

"Neither this provision, nor any other provision of the act, can properly be said to have 'created' the right of self-organization or of collective bargaining through representatives of the employees' own choosing. In *National Labor Relations Bd. v. Jones & L. Steel Corp.* 301 U. S. 1, 33, 34, 81 L. Ed. 893, 909, 910, 57 S. Ct. 615, 108 A. L. R. 1352, we observed that this right is a fundamental one; that employees 'have as clear a right to organize and select their representatives for lawful purposes' as the employer has 'to organize its business and select its own officers and agents;'

that discrimination and coercion 'to prevent the free exercise of the right of employees to self-organization and representation' was a proper subject for condemnation by competent legislative authority. We noted that 'long ago' we had stated the reason for labor organizations,—that through united action employees might have 'opportunity to deal on an equality with their employer,' referring to what we had said in *American Steel Foundries v. Tri-City Central Council*, 257 U. S. 184, 209, 66 L. Ed. 189, 199, 42 S. Ct. 72, 27 A. L. R. 360. And in recognition of this right, we concluded that congress could safeguard it in the interest of interstate commerce and seek to make appropriate collective action 'an instrument of peace rather than of strife.' To that end congress enacted the National Labor Relations Act."

In determining whether the Wisconsin Employment Peace Act is repugnant to the provisions of the National Labor Relations Act, it is of little moment whether we say that the national act confers rights and privileges upon employees or organizations of employees, or how we describe its effect upon employees. Both from the language of the act and the construction which has been placed upon it by the United States supreme court, it is apparent that the act operates effectively in a particular case only in the way and to the extent which is determined by the orders of the National Labor Relations Board. If an employer indulges in any of the unfair labor practices described in sec. 8 of the act, the sole redress of the employees is to charge the employer with such unfair labor practices before the board. When such a charge is made, the board may or may not in its discretion decide to take jurisdiction of the controversy. Its determination will depend upon whether it finds the situation is such as to substantially affect interstate commerce. When it acts, the order of the board determines the manner in which and the extent to which the act shall be effectively applied to the particular situation being dealt with. If the determination of the board together

with the force of public opinion is not sufficiently persuasive to bring about compliance with the board's order, the board may then apply to the proper circuit court of appeals for enforcement of the order. In this respect it differs materially from the Transportation Act of 1920, ch. 91, 41 U. S. Stats. at L. 456. Under that act—

"The decisions of the labor board are not to be enforced by process. The only sanction of its decision is to be the force of public opinion invoked by the fairness of a full hearing, the intrinsic justice of the conclusion, strengthened by the official prestige of the board, and the full publication of the violation of such decision by any party to the proceeding." *Pennsylvania R. Co. v. United States Labor Board* (1922), 261 U. S. 72, 79, 43 Sup. Ct. 278, 67 L. Ed. 536. See *Pennsylvania Brotherhood v. Pennsylvania R. Co.* (1925) 267 U. S. 219, 45 Sup. Ct. 312, 69 L. Ed. 581.

The vital question for consideration in this case is not whether there is repugnancy in the language of the two acts but is one of jurisdiction between the state and federal governments. Inasmuch as the National Labor Relations Act depends for its effective operation upon the determination of the National Labor Relations Board, there can be no conflict between the acts until they are applied to the same labor dispute. They are upon two different planes. The National Labor Relations Act deals with labor relations only as a means of protecting interstate commerce. The Wisconsin Employment Peace Act deals with labor relations in the exercise of the police power of the state. To the extent that the orders of the National Labor Relations Board apply in a particular controversy, the jurisdiction of state authorities, both administrative and judicial, is ousted. When under the facts of a particular case interstate commerce is substantially affected and the National Labor Relations Board takes jurisdiction, its determinations are final and conclusive, the determination of any state authority to the contrary notwithstanding.

In this case the employer has never been charged with an unfair labor practice nor has the National Labor Relations Board ever been requested to determine who is the proper bargaining representative. Consequently, the National Labor Relations Act has never been applied to the labor dispute here under consideration, and it may never be applied, depending upon the exercise of the discretion of the National Labor Relations Board. Therefore, there can be no conflict of jurisdiction between state and federal authority in this case. This conclusion does not depend upon the language of the two acts. If the language of the Wisconsin Employment Peace Act was identical with that of the National Labor Relations Act and in a particular case the National Labor Relations Board took jurisdiction, the jurisdiction of the Wisconsin Employment Relations Board would be ousted notwithstanding the identity in language of the two acts and the determination made by the National Labor Relations Board would be controlling. The action of congress leaves to the state full authority to deal with labor relations generally. Congress exercises its power in the interest of interstate commerce. With that subject the state has nothing to do. Its power to regulate labor relations is derived from an entirely different source,—the power to promote the peace, morals, health, good order, and general welfare of the people as a whole. It may not, however, in the exercise of that power encroach upon the federal domain.

The appellants, while asserting that they do not do so, in fact argue this case as if the failure of congress to define unfair labor practices of employees operates as a license to employees in the enforcement of their demands to do any or all of the things declared by the Wisconsin Employment Peace Act to be unfair labor practices. This argument stems from the idea that congress is regulating labor relations instead of interstate commerce. In *National Labor Relations*

*Board v. Fansteel Metallurgical Corp.* (1939) 306 U. S. 240, 256, 59 Sup. Ct. 490, 83 L. Ed. 627, the supreme court of the United States said:

"Here the strike was illegal in its inception and prosecution. As the board found, it was initiated by the decision of the union committee 'to take over and hold two of the respondent's key buildings.' It was pursuant to that decision that the men occupied the buildings and the work stopped. This was not the exercise of the 'right to strike' to which the act referred. It was not a mere quitting of work and statement of grievances in the exercise of pressure recognized as lawful. It was an illegal seizure of the buildings in order to prevent their use by the employer in a lawful manner and thus by acts of force and violence to compel the employer to submit. *When the employees resorted to that sort of compulsion they took a position outside of the protection of the statute and accepted the risk of the termination of their employment upon grounds aside from the exercise of the legal rights which the statute was designed to conserve. . . .*

"We repeat that the fundamental policy of the act is to safeguard the rights of self-organization and collective bargaining, and thus by the promotion of industrial peace to remove obstructions to the free flow of commerce as defined in the act. *There is not a line in the statute to warrant the conclusion that it is any part of the policies of the act to encourage employees to resort to force and violence in defiance of the law of the land. On the contrary, the purpose of the act is to promote peaceful settlements of disputes by providing legal remedies for the invasion of the employees' rights.*"

It is considered that this determination by the supreme court of the United States disposes of the contention made.

One of the principal contentions of appellants here is that fourteen strikers who were found guilty of unfair labor practices (acts of violence and coercion) are, under the terms of the National Labor Relations Act, still employees of the Allen-Bradley Company; that because of the finding of the Wisconsin Employment Relations Board that the employees

were guilty of an unfair labor practice, that relationship is severed, consequently there must be a conflict between state and federal authority. There are two answers to this contention, first, the National Labor Relations Act has never been applied to the labor dispute here under consideration; second, a mere finding of the Wisconsin Employment Relations Board does not affect the employer and employee relationship. Appellants' contention is based upon sec. 111.02 (3) of the Wisconsin Employment Peace Act. That part which is material is as follows:

"The term 'employee' shall include any person, other than an independent contractor, working for another for hire in the state of Wisconsin in a nonexecutive or nonsupervisory capacity, and shall not be limited to the employees of a particular employer unless the context clearly indicates otherwise; and shall include any individual. . . . (b) who has not been found to have committed or to have been a party to any unfair labor practice hereunder."

Considering the language of this section by itself, it may warrant the interpretation put upon it by appellants, that is, that a mere finding is sufficient to deprive the employee of his status. However, when considered in connection with other provisions of the act, we think it cannot be so interpreted. That part of sec. 111.07 (4), Wis. Stats. 1939, which is material here, is as follows:

"Final orders may dismiss the charges or require the person complained of to cease and desist from the unfair labor practices found to have been committed, suspend his rights, immunities, privileges or remedies granted or afforded by this chapter for not more than one year, and require him to take such affirmative action, including reinstatement of employees with or without pay, *as the board may deem proper.*"

The continuation of the status of an employee is certainly a right or privilege. The act specifically provides how it shall be terminated, that is, by order of the board.

Sec. 111.07 (8), Wis. Stats. 1939, provides:

"Within thirty days from the date of the order of the board as a body any party aggrieved thereby may petition the circuit court for the county in which he or any party resides or transacts business *for review of the same. . . .*"

No provision is made for reviewing the findings. Under sec. 111.07 (7), (8), Wisconsin Employment Peace Act, the court has power only to "confirm, modify or set aside the order of the board and enter an appropriate decree." It examines the record to ascertain whether the findings are supported by the evidence. Its judgment may operate only upon the provisions of the order. It is considered, in view of the large discretionary power committed to the board, that the act affects the rights of parties to a controversy pending before the board only in the manner and to the extent prescribed by the order. As pointed out in *Hotel & R. E. I. Alliance v. Wis. E. R. Board,* 236 Wis. 329, 294 N. W. 632, 295 N. W. 634, the jurisdiction of the Wisconsin board over labor disputes is to some extent concurrent, it being provided in sec. 111.07 (1), (4), Wis. Stats. 1939:

"(1) . . . But nothing herein shall prevent the pursuit of legal or equitable relief in courts of competent jurisdiction. . . .
"(4) . . . Final orders may dismiss the charges," etc.

As already stated, the manner and the extent to which the act shall apply in a particular case pending before it is committed to the discretion of the board. Its commands are found in the order, which determines the status and obligations of all parties to the controversy, not in the findings. In the board's order under review, there is no provision which suspends the status as employees of the fourteen individual appellants found guilty of unfair labor practices. In this case, for the reasons stated, there is no conflict in regard to employee status.

In response to the argument made by appellants that there is a conflict between the two acts because of the difference in definitions, we point out that these definitions apply only for the purposes of the act in which they are found. In sec. 2 of the National Labor Relations Act certain terms used in the act are defined. That section begins, "When used in this act," the various terms defined mean thus and so. Definitions of terms in the Wisconsin Employment Peace Act are found in sec. 111.02, Wis. Stats. 1939. That section begins, "When used in this chapter," the term defined includes or means thus and so. In controversies in which the National Labor Relations Board takes jurisdiction, it will in the course of its determination apply the definitions contained in the National Labor Relations Act. When the Wisconsin Employment Relations Board takes jurisdiction of a labor dispute it will apply the definitions contained in the Wisconsin Employment Peace Act in formulating its determinations. Conflict between the two acts can arise only with respect to orders issued by each of the boards dealing with the same situation. No matter how arrived at by the boards there can be no conflict if there is none in the orders dealing with the same labor dispute. For the reason stated we discover no conflict in the two acts on account of the difference of definitions of the terms to be found in them.

When appellants concede that the state may punish unlawful acts of strikers who are engaged in striking because of unfair labor practices of their employer, they concede the power of the state to deal with some aspects of every labor dispute. In the case of the National Labor Relations Act the jurisdiction of the federal authority is not aroused until such a situation has arisen that interstate commerce is impeded or obstructed. On the other hand, state action is regulatory in its nature and is designed to bring about industrial peace, regular and adequate income for the employee, and uninterrupted production of goods and services for the promotion

of the general welfare. The federal act deals with a situation that has arisen. The state act seeks to forestall action which may lead to disorder and loss of life and property.

Appellants specified nine ways in which the state and federal acts conflict, but as already pointed out, these conflicts do not exist until the National Labor Relations Act is applied by the National Labor Relations Board in a particular case. As has already been pointed out state power is not destroyed by federal action, it is merely suspended in a particular case. If a man who owns and possesses a tool and is forbidden to use it, he still has the tool. He is deprived not of the tool but of the power to make use of it. The state is not deprived of its power to deal with labor relations by the National Labor Relations Act. Its power is suspended so far as is necessary to give effect to that act.

We might have disposed of this case when we reached the conclusion that the federal act not having been invoked with respect to the labor dispute here under consideration, there can be no conflict between the two acts. We have thought it best, however, in the interest of certainty to deal specifically with certain questions raised by appellants. If the National Labor Relations Act is repealed, the power of the state over labor relations will be the same as it was before the act was passed. If the Interstate Commerce Act should be repealed the state's power over interstate commerce would not be enlarged. It might have greater latitude in dealing with intrastate commerce, but its jurisdiction would be over intrastate commerce, not over interstate commerce.

We wish to point out again that the court has no jurisdiction or authority to pass upon the policy involved in this or any other act. Questions of public policy are primarily for the legislature. If the provisions of this act are too restrictive, as claimed in the brief, the court may not deal with that feature of the act if it is otherwise within the field of constitutional legislative action. In upholding the law against at-

tacks upon its validity, on the ground that it is unconstitutional, the court neither commends nor criticizes the public policy involved. If the act is too restrictive, the remedy lies with the legislature and not with the court.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on March 11, 1941.