**MASETTA, Plaintiff-Appellant, v. NATIONAL BRONZE & ALUMINUM FOUNDRY CO., Defendants-Appellees.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22390. Decided April 21, 1952.

M. D. Barrisch, Edward Mamrack, Cleveland, for plaintiff-appellant.

D. W. Hornbeck, J. H. Ritter, Cleveland, for defendants-appellees.

## OPINION

By THOMPSON, J.:

This case constitutes an appeal to this Court on questions of law from a judgment of the Common Pleas Court of Cuyahoga County granting defendant's motion and dismissing plaintiff's amended petition· on the ground that the Court had no jurisdiction over the action and subject matter.

The case is one of first impression in Ohio. The petition was filed in the Common Pleas Court and, after certain preliminary motions, an amended petition was filed by the plaintiff, Masetta, against defendant, The National Bronze & Aluminum Foundry Co., an Ohio corporation, allegedly engaged in the business of casting aluminum and other metal products.

Plaintiff in his amended petition asserted that the International﹀Union, United Auto Workers of America, A. F. L. was an unincorporated labor ·organization made up of members in the United States and Canada too numerous to mention and that the said organization through its Union Local 714 was the sole collective bargaining agent for employees in the bargaining unit· agreed upon between defendant and the Union. Plaintiff further declared that he was an employee of the defendant and a member in good standing and a duly elected officer of the Union and that he was bringing the action "in his own behalf and for .and on behalf of other employees, members of said Local Union and within said bargaining unit; that said employees are too numerous to bring into court and that it would be impracticable to do so

and that he and said employees have a common interest in the subject matter in this cause of action."

Plaintiff further asserted that under date of December 16, 1946, the defendant and plaintiff's Union entered into a written collective bargaining agreement covering terms and conditions of employment, including all matters relating to hours, wages and working conditions, effective September 15, 1946, and to continue in effect from year to year unless changed by mutual consent, and that said agreement was in effect during the times mentioned in the amended petition. Plaintiff then referred to Article VI of the agreement setting forth seniority rights and privileges and quoted verbatim in his amended petition from seven paragraphs of that Article relating to such seniority rights.

Plaintiff further alleged that the agreement provided for specific rates of pay and methods of payment and paid vacation terms, and declared that the agreement was for and on behalf of individual employees of the defendant and that the benefits inured to individual employees, including plaintiff.

Plaintiff further alleged that on January 23, 1948, without prior notice, defendant laid off plaintiff and the entire complement of maintenance and production employees constituting the bargaining unit and that, in direct violation of the agreement, within three weeks thereafter, defendant hired new workmen to replace plaintiff and other employees; that said action by defendant unlawfully deprived plaintiff and other employees of their rightful jobs and caused them to suffer irreparable injuries and loss of wages; that, unless restored to their position they would continue to suffer loss of wages, seniority, vacation bonuses, hourly rates and other benefits inuring under the agreement.

Plaintiff therefore prayed in his own behalf and in behalf of other employees having a common interest therein as follows: (1) that defendant be compelled to answer interrogatories attached to the amended petition; (2) that defendant be enjoined from further retention of its present complement of maintenance and production employees; (3) that defendant be enjoined (ordered) to restore plaintiff and other employees, constituting the bargaining unit, to their jobs with such full seniority benefits and other rights as would have accrued under the agreement if not breached by the defendant; (4) that defendant be ordered to account to plaintiff for all wages, bonuses, piece work, earnings and vacation monies due or which would have been due to plaintiff and the other employees for and during the period since January 23, 1948. Plaintiff also prayed for damages against defendant corporation in the sum of $60,000.00.

To the foregoing amended petition, defendant filed an amended answer containing three defenses; (1) lack of jurisdiction; (2) that the collective bargaining agreement had terminated November 1, 1947; (3) that the agreement applied only to certain of the defendant's employees and that no new employees were hired to take the jobs of plaintiff and other members of his Union who were laid off, and that after January 23, 1948, there were no maintenance and production jobs available for the type of work plaintiff and the other members of the Union performed when defendant was engaged in producing aluminum castings.

Defendant then alleged that in January, 1948, it went out of the business of casting aluminum and, up until July, 1950, had thereafter been engaged in experimental and development work on frozen mercury precision casting processes requiring employees with more education and technical requirements than provided in the original agreement. The answer asserted that since July 1, 1950, defendant has not been engaged in any active business and has had no employees of any kind since that date.

Plaintiff's reply consisted generally of a denial of the allegations of defendant's answer.

Shortly after plaintiff's reply, defendant filed its motion to dismiss plaintiff's amended petition for the reason that the court had no jurisdiction over the action or subject matter thereof. The trial court granted the motion and, plaintiff not desiring to plead further, judgment was rendered for the defendant. It is from that judgment that appeal has been taken to this court on a question of law.

The one assignment of error on the part of plaintiff appellant is that the trial court erred in dismissing plaintiff's amended petition and in rendering judgment for the defendant.

The trial court, in granting defendant's motion to dismiss for lack of jurisdiction of the subject of the action, based its decision on the consideration that plaintiff's suit was not maintainable as a class action under §11257 GC and expressly stated that no opinion was being expressed as to rights of plaintiff and his co-workers under the Labor Management Relations Act.

We deem it important, in reaching a decision in this case, to bear in mind the provisions of the National Labor Relations Act and the Labor Management Relations Act.

Analysis of the pleadings reveals that the present action is (1) in equity, (2) in a state court, (3) for specific enforcement of a collective bargaining agreement, (4) in behalf of plaintiff and other individual members of a union. It is

not an action to prevent unfair labor practices. The latter action is one of which the National Labor Relations Board has jurisdiction where the employer, as here, is in an industry affecting commerce. 29 U. S. C. A. Sec. 158. It has been held that the Board's jurisdiction is exclusive in such instance and prevents consideration of such a case by a federal district court. United Brick & Clay Workers v. Robinson Clay Products Co. 64 Fed. Supp. 872 (1946); United Steel Workers v. Shakespeare Co. 84 Fed. Supp. 267 (1949). It is also apparent that this is not an action by a labor union against an employer for breach of a collective bargaining agreement. Such an action may be brought in any district court of the United States having jurisdiction of the parties under 29 U. S. C. A. Sec. 185(a). Whether the conferral by Congress of jurisdiction upon the Federal District Courts in such cases signifies that this is the sole forum wherein a union may sue an employer engaged in interstate commerce has not been authoritatively decided. In Allen-Bradley Local v. Wisconsin Employment Relations Board, 237 Wis. 164, 295 N. W. 791 affirmed, 315 U. S. 740, the Wisconsin Supreme Court declared: "The determination of the field occupied respectively by the National and State Labor Relations Acts is a question of the most difficult and delicate nature presented to the courts of this country." We find similar difficulty in many questions concerning the effect of the National Labor Relations Act and the Labor Management Relations Act on state court suits.

Our immediate concern is the effect of these acts on individual and class actions in a state court for specific enforcement of a collective bargaining agreement.

With respect to class actions in the Federal Courts in Tisa v. Potofsky, 90 Fed. Supp. 175, the Federal District Court in New York declared as follows:

"The contention that the Labor Management Relations Act abolishes class actions in the federal courts by or against labor unions is based upon Sec. 301(b) of that Act, 29 U. S. C. A. Sec. 185(b) * * *. There is no inconsistency in permitting unions to sue and be sued in their common names and at the same time allowing them to sue and be sued by the device of the class action. * * *. Cf. Tunstall v. Board of Locomotive Firemen & Enginemen, 4 Cir. 1945, 148 F. (2d) 403. As this case indicates, if the class suit is to be considered abolished in this field, it can be only because of the clearly expressed mandate of Congress. I do not find such an intention in the language of 29 U. S. C. A. Sec. 185(b). In fact, the language used is expressly permissive: 'may sue or be sued as an entity. * * *' I reject defendant's interpretation of the

Labor Management Relations Act, and regard the class action as still available. The decision in Schatte v. International Alliance, D. C. S. D. Cal. 1949, 84 F. Supp. 669, 673, cited by the defendants, does not conflict with this conclusion. To the extent that its dicta are inconsistent with the views here expressed, I find myself unable to follow it."

No appeal was taken from the foregoing decision which was a class action at law for damages for breach of a bargaining agreement and not an action in equity for specific performance. We find its logic persuasive with respect to class suits generally. It is our belief that the National Labor Relations Act and the Labor Management Relations Act have not sought to legislate as to the class suit or as to suits by individuals to enforce a collective bargaining agreement against an employer so as to exclude state action.

In a note in 18 A. L. R. (2) 352 entitled, "Right of Individual Employee to Enforce Collective Labor Agreement Against Employer" numerous cases are referred to, and the following statement occurs:

"Although the National Labor Relations Act, in its original form and as amended by the Labor Management Relations Act, recognizes the right of employees to bargain collectively through unions, it should be noted that no provision of the act confers upon an individual employee the right to enforce his rights under a collective labor agreement by court action."

This is certainly true with respect to the federal courts but that statement does not signify that previously existing rights of individuals in state courts are thereby taken away.

See also, the following statement in the same note at page 353 as follows:

"Attention is called to the fact that suit by an individual employee is not the only remedy available to enforce a collective labor agreement against an employer, and that it may be enforceable by a suit brought by the contracting union or by a class suit brought by a member of the union."

Three cases are cited in support of the foregoing statement: O'Jay Spread Co. v. Hicks, 195 S. E. 564 (Georgia, 1938): Faultless Caster Corp. v. United Electrical R & M Workers, 86 N. E. (2) 703 (Indiana Appellate 1949); Leveranz v. Cleveland Home Brewing Co. 24 Ohio N. P. (N. S.) 193 (1922).

The Georgia case is of interest because the Court, in holding that a class suit may be brought in equity on the part of individuals against an employer to enforce a collective bargaining agreement, expressly referred to the National Labor Relations Act in the following words:

"The fact that the National Labor Relations Act of July 5, 1935, 49 Stat. 447-450 and other prior federal labor acts,

Title 29 U. S. C. A. Sec. 51-53, 101 et seq., 151 et seq., recognize the existence and rights as entities of unincorporated associations and labor organizations in dealings with employers and in specific relief through federal agencies as provided by such acts, would not operate to change the rule just stated."

For further consideration of questions growing out of the Labor Management Relations Act, see note in 17 ALR (2) 614 entitled: "Consideration of provision of Labor Management Relations Act conferring jurisdiction on federal district courts in actions for violations of contract between employer and labor organizations.

Having determined that nothing in the National Labor Relations Act nor in the Labor Management Relations Act specifically forbids the maintenance of individual or class actions generally in state court we reach the question whether such actions are cognizable by the Ohio Courts. It has long been recognized that an individual member of a union may sue in Ohio courts for damages for breach of a collective bargaining agreement. **H. Blum & Co. v. Landau, 23 Oh Ap 426 (1926).** This Court in the case cited declared that a contract between a manufacturer's association and a union for the benefit of employees or members of the association could be enforced by an employee as a third party beneficiary although the employee's name did not appear in the contract.

In deciding whether a class action, as distinguished from an individual suit, is maintainable in Ohio on the part of members of a labor union against the employer, we are called upon to consider the effect of §11257 GC which provides as follows:

"Sec. 11257 GC. One or more can sue or defend for all. When the question is one of a common or general interest of many persons, or the 'parties are very numerous, and is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

The section quoted (former R. S. Sec. 5008) appearing substantially in its present form since 1853 (51 O. L. 57, Sec. 37) is a codification of the principle authorizing virtual representation. 6 Ohio St. Univ. L. J. 110 at 112. In Warren "Corporate advantages without incorporation" p. 543 it was stated as long ago as 1929 that more than half of the states have similar statutes. Under the principle of virtual representation it is recognized in Ohio as an exception to the rule that all persons having an interest in the subject matter of an equity suit must be made parties, that a few persons may sue or defend for themselves and all others similarly situated. The

rule based on practicality and convenience is applicable to all civil actions which the Code substituted for former suits in equity and actions at law §11238 GC and 30 O. Jur. (Parties) Sec. 27, p. 738.

The most recent case in the Ohio Supreme Court to discuss the class suit and §11257 GC, is **Davies v. Columbia Gas & Elec. Corp. 151 Oh St 417.** The first paragraph of the syllabus states the holding of the Court as follows:

"(1) For a person to properly institute an action for the benefit of himself and others, pursuant to the provisions of §§11254, 11256 and 11257 GC, pertaining to class actions, the petition must disclose a common or identical interest between the plaintiff and those he assumes to represent with a right to recovery or redress based on the same essential facts."

In the Davies case, it may be noted that the decision of the Court was that a class action would not lie in the case of a suit against five gas companies and certain other defendants brought by an individual plaintiff purporting to represent himself and some 700,000 other gas customers in which the relief sought was money damages as a result of dilution of gas and alleged overcharges. The Supreme Court pointed out that the damages in such action would depend on the proof of the alleged overcharges in each instance, that redress of various customers against the numerous defendants would depend upon a large variety of factors and conditions in different localities, that there was no community of interest among those comprising the class and that many whom plaintiff undertook to represent had no common or identical interest with him and might not be in accord with the relief which plaintiff sought. The circumstances differed greatly from the present case where the rights of plaintiff and other employees grow out of the same agreement and where the contract was entered into for the benefit of plaintiff and other employees, all of the class being members of the same union whose seniority rights had been allegedly violated and all of whom had been laid off. The allegations of the amended petition in the instant case assuredly indicate common, if not identical, interest in the relief sought.

One of the early Ohio Supreme Court cases interpreting §11257 GC (then R. S. 5008) was **Platt v. Colvin, 50 Oh St 703 (1893)** in which it was clearly recognized that the statute in question applies to actions of a legal, as well as to those of an equitable nature. That case permitted members of an unincorporated joint stock company, about 1000 in number, and too numerous to be joined as plaintiffs, to sue through their president in his own behalf and in behalf of other stockholders to recover money stolen from the association.

In **Wheatley v. A. I. Root Co. 147 Oh St 127 (1946)** under the same statute, a preferred stockholder was held authorized to maintain an action on behalf of himself and other preferred stockholders to enjoin a corporation from carrying out a proposed plan of recapitalization adversely affecting the preferred stockholders. In **Haggerty v. Squire, Supt. of Banks, 137 Oh St 207 (1940)**, the second paragraph of the syllabus reads as follows:

"2. Where a number of persons have separate and individual claims and rights of action against the same party, but all such claims arise from a common source and represent a like interest, the whole matter may be litigated in a single action brought by all of the claimants as co-plaintiffs or, in case the parties are numerous, making it impracticable to bring them all before the court, by one or more of them suing for himself or themselves and on behalf of the other claimants."

It does not seem that the fact that in the instant case a court of equity may be required to adjudicate the separate and individual claims of a number of members of a Union and that the claims with respect to compensation may differ in amount should be a reason to prevent maintenance of a class suit under §11257 GC, where all of the rights sought to be enforced arise from a common source, to-wit, the same contract. Historically, one of the primary functions of a court of equity was to avoid multiplicity of actions and we believe an equity court is equipped to adjudicate the seniority and other rights here asserted.

The only case we have found directly in point in Ohio on the right to seek remedy in equity for specific enforcement of a labor contract by class action is the nisi prius case previously referred to and cited in 18 A. L. R. (2) 354. The case is Leveranz v. Cleveland Home Brewing Co. 24 N. P. (N. S.) 193 (1922). Although that case was decided prior to enactment of the National Labor Relations Act and Labor Management Relations Act, we have pointed out that in our opinion Congress by these measures showed no intent to take away previously existing rights to maintain in state courts either individual or class actions to enforce labor agreements. The reasoning in the case of Leveranz v. Cleveland Home Brewing Co. supra, commends itself to our judgment. Plaintiff in that case brought suit in behalf of himself and other members of a union to enjoin the defendant employer from violation of a labor contract. In discussing the right to maintain the action under §11257 GC, the court declared:

"Conceding that each of the employees in the instant case

has a legal remedy by suit against his individual employer, or by bringing many suits during the period of this contract, is such remedy adequate or of any value to such employee? We think not under the facts shown herein. Is there such a community of interest among the members of Local Union No. 52 as would justify a court in finding this action maintainable? This question involves a discussion as to whether or not such a contract as it is admitted was entered into by these parties, was of any value. It is self-evident that both of the parties to this contract in question deemed such a contract of great importance to them. * * *.

"It is contended by defendants that only the 40 men who are employed by these several breweries have any interest in this contract in question. We do not think this position is logical. While but 39 or 40 men are now employed, a much larger number may be employed during the life of the contract, and any changes in the personnel of those employed would come, of course, from the other members of this local union. Those employed are not immune from sickness or death, or perhaps from securing more desirable employment elsewhere. In the event of changes, other members of this union would be selected, but which ones no one can tell. It is possible, but hardly probable, that the entire membership might be called upon during the year. It would therefore seem as though the entire membership would have a beneficial interest in this contract, a substantial interest in having it enforced according to its terms. * * *

"If a court of equity cannot enjoin an attempted breach of such a contract, then the system of collective bargaining may as well be abandoned, and such advantages as come to both the employer and employee by reason of such system, will be lost, as the legal remedy is wholly inadequate. The expense of obtaining it would render it valueless."

We believe that any doubt as to jurisdiction in this case should be resolved in favor of permitting the door to be open to suits of this character in the state courts, in the absence of a clear and definite contrary declaration by the National Congress, and in the absence of judicial authority to the contrary.

If our finding of jurisdiction has the effect of disturbing the harmonious flow of movement of goods in interstate commerce in labor relations cases or upsets the contemplated pattern intended by Congress, we can merely suggest that such result is one for consideration by Congress rather than by this court.

The cause is remanded to the trial court with instructions

to vacate the judgment dismissing the amended petition and for further proceedings according to law. Exc. Order see journal.

HURD, J, concurs.

SKEEL, PJ, dissents for the reason that the allegations of the petition do not make out a class action and the parties must seek out their individual remedies.