**UNITED ELECTRICAL RADIO & MACHINE WORKERS OF AMERICA v. INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS et al.**

No. 48.

Circuit Court of Appeals, Second Circuit.

Nov. 4, 1940.

Boudin, Cohn & Glickstein, (Louis B. Boudin, of New York City, of counsel) for appellant.

Isaac Lobe Straus, of Baltimore, Md., Claude A. Hope and Delafield, Marsh, Porter & Hope, all of New York City, for International Brotherhood of Electrical Workers.

Parker & Duryee, of New York City (Davidson Sommers, of New York City, James M. Houston, of Pittsburgh, Pa., of counsel) for National Electric Products Co.

Herman L. Weisman, of New York City, (Herman L. Weisman and Ambrose Doskow, both of New York City, of counsel) for H. Z. Altberg, Inc., and others.

Raymond L. Wise, of New York City, (Raymond L. Wise, William Esbitt, and Theodore W. Kohn, all of New York City, of counsel) for L. K. Comstock & Co. and J. Livingston & Co.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment dismissing a complaint for insufficiency on its face and must therefore be decided solely upon its allegations. The complaint alleged that the plaintiff was an unincorporated labor union whose members are engaged in producing electrical machinery and the like, and which had been chosen as collective bargaining representative "by numerous employees," and certified by the National Labor Relations Board "on numerous occasions"; so that now it is the representative "of the majority of employees in the said industry and certified as such in a vast majority of the cases wherein such disputes had arisen." The defendant, International Brotherhood, is also an unincorporated labor union whose members are engaged "primarily * * * in the installation of electrical equipment." Two other defendants are locals of the Brotherhood, and all the corporate defendants except the National Electric Products Corporation are "engaged in the handling and installing of electrical machinery"; the National Electric Products Corporation is a manufacturer of such machinery. All the defendants have conspired "to deprive the plaintiff of the right conferred upon and guaranteed to it" by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., "as the representative of its members and other workers in the said industry for collective bargaining." To carry out this conspiracy the defendants agreed among themselves and with others; (a) "not to allow" the plaintiff's members and other workmen "to freely choose their own representatives for the purpose of bargaining collectively * * * but to coerce them to designate" the Brotherhood, or its creatures; (b) to prevent members of the Brotherhood from installing any electrical machinery made by workmen who had chosen the plaintiff as their bargaining representative; and (c) to notify all employers that unless they refused to bargain collectively with the plaintiff when it was chosen as bargaining representative, they would not install the products of these employers and would prevent their installation. That, further to carry out the conspiracy the defendants (d) boycotted all products made by these employers, among which were those made by the plaintiff's members employed in shops in which it had been chosen the bargaining representative; and (e) had notified "all dealers and jobbers in electrical machinery" of the boycott, because of which many of those notified stopped handling such products.

These objects the defendants carried out (1) by "agitation, propaganda, and other organizational work, in order to wean away the members of the plaintiff from their allegiance"; (2) by "slander and vilification of the plaintiff" to induce other workmen to join the Brotherhood and, again, "to wean away" the plaintiff's members; (3) by the employer-defendants' discharging such of their employees as had become members of the plaintiff; (4) by spreading rumors that unless the employees of the employer-defendants chose the Brotherhood as bargaining representative, they would boycott the products of any employer who recognized any other representative. By these means many employees who would otherwise have chosen the plaintiff had been led to choose the Brotherhood as bargaining representative, by which the plaintiff had suffered damage in the amount of $250,000. (Although the complaint said nothing about interstate commerce, we shall assume that the industry in which the plaintiff's members were employed and suffered the putative wrongs,

was interstate in such sense as to be subject to the National Labor Relations Act.)

We shall first try to state the plaintiff's legal position as we understand it. Section 7 of the National Labor Relations Act did not "create a new right," but "secured" an old one; and for this reason it did not limit the remedies available·for its protection to those laid down in the act itself; that is, recourse to the Board and to the courts only through the Board. It is true that as to "unfair labor practices," the Board's powers are "exclusive," § 10 (a); but the very fact that they were expressly made so in that instance should be taken to indicate that they were not to be exclusive as to other "rights," and especially as to the "right secured" by § 7. While § 9 gives the Board power to investigate "and decide controversies as to who is the true bargaining representative of the employer unit, craft unit, plant unit or subdivision thereof," and while the Board's certificate may be reviewed incidentally to the review of an order forbidding "an unfair labor practice," § 9 (d), that is not a remedy for the violation of the "right secured" by § 7. Moreover, it is not to be supposed that because no remedy was expressly given, none was intended; on the contrary there is a remedy for the violation of every right, and here there is none unless the federal courts can give it. Those courts therefore have a jurisdiction under § 24 (1) of the Judicial Code, 28 U.S.C.A. § 41(1), because the action "arises under the * * * laws of the United States." (Incidentally, it is not necessary that the amount in controversy should be $3,000, because the action also arises under a "law regulating commerce," § 24 (8). But that it is not necessary so to decide, because in any event the amount at stake is far more than the necessary amount.)

■ The plaintiff in saying that § 7 did not "create" a new "right," but merely "secured" an old one, borrows from the language used in Amalgamated Utility Workers v. Consolidated Edison Co., 309 U.S. 261, 263, 60 S.Ct. 561, 84 L.Ed. 738, but we think that it has misapplied what the court said. Before 1935 the states had generally recognized that employees had a "legally protected interest" in collective bargaining, but they differed as to the extent to which the conflicting interest of the employer was an excuse for its invasion. The National Labor Relations Act spoke to that background and "secured" the existing "right," but by more than the bestowal of new remedies. When by § 7 Congress declared that the interest of employees in collective bargaining should be protected, it fixed by its own fiat what conflicting interests, if any—whether of employers or others—should be excuses for invading it. And while a purist might indeed insist that that "created" a new "right," the meaning of the court is entirely clear; it was speaking of the fact that Congress did not legislate in vacuo. Two consequences follow from this: One, that the plaintiff's action here "arises under the * * * laws of the United States," § 24 (1) of the Judicial Code; and the other, that the statute did not merely give new remedies for violations of rights created by the states, but set up a procedure to protect a right which the act itself had basically reconstructed.

■ As to the merits, we think that the procedure set forth in the act is the full measure of the remedies available to the plaintiff. We agree that if § 7 had made up the whole statute, the customary remedies would probably have been open to an injured party. Indeed, in Texas & New Orleans R. Co. v. Brotherhood of Railway & Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, the Supreme Court went much farther. Having before it the Railway Labor Act of 1926, 45 U.S.C.A. § 151 et seq., a highly articulated piece of legislation which gave wide powers to the Board of Mediation, it nevertheless held that § 2, sub. "Third," which protected the right of collective bargaining against "interference, influence, or coercion," implicitly gave the customary judicial remedies to any party aggrieved. And again in Virginian Railway v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, the court held that under the Railway Labor Act of 1934, 45 U.S.C.A. § 151 et seq., the decision of the Board of Mediation was enforcible by mandatory injunction, though Congress had not provided any legal remedy whatever. It is apparent therefore that no general principle forbids recourse to a court under a statute of this general purport, and that the case at bar must be decided by an analysis of the National Labor Relations Act as a whole.

■ As to at least one of the defendants, the National Electric Products Corporation, there can be no doubt. Its part in the alleged conspiracy was clearly an

"unfair labor practice" under § 8 (1), and as such it was justiciable only by the Board under § 10 (a). The same may be true as to the other employer-defendants, for, while they are not employers of the plaintiff's members, it is at least arguable that § 2 (3), 45 U.S.C.A. § 152, subd. 3, makes it an "unfair labor practice" for the employers of employees who install electrical machinery "to interfere with, restrain, or coerce" the employees of employers who make it. However, since that would still leave unanswered the complaint as to the defendant unions, we pass the point, because in any event the plaintiff has no cause of action as against those unions. We need not say that no one but an employer can violate the "right secured" by § 7; violations by a competing union may indeed become crucial in the Board's action. We are concerned only whether, assuming that there is a violation, the usual remedies are open to employees in the federal courts; and we agree that the fact that those courts may not be open to employers is not conclusive. Congress might have thought that violations by others stood outside the general scheme, and have left them to the courts to deal with like other wrongs. Indeed, if there be violations which lie so far outside the scope of the Board's general powers that the judgment of a court would not interfere with the discharge of its functions, they may be justiciable in the usual way. But here we have to deal with the efforts of a competing union to obstruct the free choice of another union as bargaining representative; and we think that to allow courts to decide that issue might impair, and on occasion actually nullify, the plan as a whole. It is true, as the plaintiff says, that the Board has no preventive jurisdiction over unlawful acts of the defendant unions; it cannot order them "to cease and desist," and for that reason a court alone could nip the plaintiff's wrongs in the bud and protect it from losing members, to the damage of its pocket and its prestige and to the loss of its position as bargaining representative. It is, however, not true that the Board has no kind of jurisdiction; § 9 (c) gives it complete power over the choice of bargaining representatives; it may investigate all disputes "concerning the representation of employees" and "certify" the winner—ordering a new election if need be. In such an investigation it would be charged with the duty of examining whether the "right secured" by § 7 had been violated; an election secured by unlawful means is no election at all, and the Board would be bound to cancel it and take proper measures to eliminate from the new election the effect of past wrongs, as much when they emanated from a competing union, as when they did from an employer. The issues determined by the judgment here will therefore be, or at least may be, the same as those which the Board must determine if and when the plaintiff, having been displaced, seeks to reëstablish itself as bargaining representative. From this it is evident that if a judgment here would be res judicata in such sense as to conclude the Board, the action must certainly fail; Congress meant above all to entrust to it the choice of bargaining representatives, subject only to such review as might be possible under § 9 (d); it would certainly circumscribe its authority to subject it to the estoppel of a judgment inter partes. If on the other hand the judgment would not be res judicata as to the Board, it would, if successful, control the conduct of the defendants meanwhile; before the question reached the Board in a proceeding under § 9 (c), it would enjoin them from proselytizing on the theory that they were violating the "right secured" by § 7. But that would as much obstruct the exercise of the Board's functions as though the judgment were an estoppel, because the Board might not agree with the court that the conduct enjoined did in fact violate the "right secured" by § 7. Yet when the Board came to choose the bargaining representative under § 9 (c), the defendants would have been cut off from electioneering which the court thought wrongful but which the Board did not, and it would not appear what effect that might have had upon the election. The Board would be faced with a status quo which it could not remedy, but which it would not have countenanced if it could have helped. We are not clear that Oberman & Co. v. United Garment Workers, D.C., 21 F.Supp. 20, must be construed otherwise, but if so we cannot agree.

■■■ We do not hold that the plaintiff has no recourse to any court for the loss of its members; that may, or may not, be so. But if it has, the suit does not "arise under the * * * laws of the United States," the only basis of jurisdiction here put forward; its gravamen must be a violation of the law of a state. But § 7 does not protect a union against that kind of

wrong committed by a competing union except as an incident to the determination by the Board of its right to act as a bargaining representative.

Judgment affirmed.