**UNITED OFFICE AND PROFESSIONAL WORKERS OF AMERICA v. SMILEY et al.**

Civil Action No. 2755.

District Court, M. D. Pennsylvania.
April 21, 1948.

F. Brewster Wickersham, of Metzger & Wickersham, all of Harrisburg, Pa., and Boudin, Cohn & Glickstein, of New York City, for plaintiff.

George L. Reed, Sol., Pennsylvania Labor Relations Board, of Harrisburg, Pa., M. Louise Rutherford, Deputy Atty. Gen., for Pa., and T. McKeen Chidsey, Atty. Gen. for Pa., for defendant Pennsylvania Labor Relations Board.

Joseph A. Padway and Herbert S. Thatcher, both of Washington, D. C., for defendant Industrial and Ordinary Insurance Agents Council.

Joseph W. Henderson, of Rawle & Henderson, all of Philadelphia, Pa., for defendant Prudential Ins. Co. of America.

MURPHY, District Judge.

Defendants, Pennsylvania Labor Relations Board (herein called State Board) and American Federation of Industrial and Ordinary Insurance Agents' Council (herein called Council) affiliated with the American Federation of Labor, move respectively to dismiss a complaint filed by United Office and Professional Workers of America (herein called United) affiliated with the Congress of Industrial Organizations.[1]

Upon petition filed by Council for certification of a representative for collective bargaining purposes of the Industrial Insurance Agents (herein called Agents) of the Prudential Insurance Company of America (herein called Prudential) working in Pennsylvania, the State Board found[2] a unit comprising Agents working exclusively in Pennsylvania and including agents whose debits were partly in Pennsylvania and partly in Maryland, constituted an appropriate unit and proceeded to determine the choice of representative. Whereupon United sought an injunction pendente lite and permanent restraining State Board and Council from proceeding with election and certification under State auspices, contending for application of the doctrine of supremacy and supersedure; and a declaratory judgment as to the exclusive rights of United as such representative for Prudential agents by virtue of Art. I, Section 8, and Art. VI, Cl. 2, United States Constitution, U.S.C.A.Constitution; the National Labor Relations Act (herein called the NLRA), 49 Stat. 449 et seq., 29 U.S.C.A. § 151 et seq., and certain proceedings by the National Labor Relations Board (herein called National Board),[3] and cer-

[1] See D.C.E.D.Pa., 75 F.Supp. 695, Ganey J., dismissing complaint for lack of venue.

[2] Prudential Insurance Company of America's Employees Case No. 4, year of 1945.

[3] 61 NLRB 1269, May 19, 1945, Matter of Prudential Insurance Company of America. Motion for reconsideration denied June 15, 1945.

tain decisions of the United States Supreme Court.

State Board and Council maintain this Court lacks jurisdiction in that‹ plaintiff failed to aver the required jurisdictional amount in controversy; and that no cause of action is stated upon which relief can be granted. They contend for a right to continue unimpeded by any order of the United States District Court by virtue of the Pennsylvania Labor Relations Act (Act June 1, 1937, P.L. 1168 as amended) 43 P.S. § 211.1 et seq.; the X Amendment, United States Constitution, U.S.C.A.Constitution, and the Police Power of the State. They assert the jurisdiction of the National and State Boards is concurrent; that "there can be no conflict between the Acts until they are applied to the same labor dispute" and even then not until the National Board actually assumes jurisdiction in the precise dispute and by a definitive order asserts its jurisdiction and thereby ousts the State Board; that the decision of the National Board, supra, 61 NLRB 1269, is of no avail even though it declared that a state-wide unit was not appropriate and on the contrary that the appropriate unit was a system-wide unit, arguing that because it referred to four other States and not to Pennsylvania it was not controlling; incidentally they argue that since the American Arbitration Association (herein called AAA), which conducted the card check to select a representative for Prudential's agents, was not a properly designated public body the selection of a representative was of no avail notwithstanding the recognition of such unit in‹ the contract between United and Prudential and by the National Board, supra; that the National Board did not decide, the question presented to the State Board and ,its decision is therefore not controlling; that the United States Supreme Court has not decided State juridiction is ousted by the record presented. Finally defendants herein argue even if there is such ruling plaintiff must fail because of failure (a) to aver lack of adequate remedy at law; (b) to exhaust the remedies provided by Pennsylvania law, i. e., the administrative remedies before State Board, judicial review in Pennsylvania courts, and appeal to the United States Supreme Court; (c) to aver plaintiff suffered irreparable injury.

On January 15, 1943, by a card check conducted by AAA, plaintiff was designated collective bargaining representative for Prudential agents "throughout the United States,"[4] including Pennsylvania. February 1, 1943, plaintiff and Prudential executed a labor agreement covering the Agents in said unit and thereafter worked under similar agreements.[5]

[4] See footnote 3. Prudential operates in 37 states (not Mississippi, Arkansas, Texas, Arizona, New Mexico, Nevada, Idaho, Wyoming, Montana, North Dakota, South Dakota). The unit designated by AAA covered Prudential agents in 31 states (not Wisconsin, Minnesota, Ohio, Delaware, Maryland, Virginia, District of Columbia). At the time of the hearing Prudential had a contract with A. F. of L. covering agents in Delaware, Maryland, Virginia and District of Columbia; International, contracts for the agents in Wisconsin and Minnesota. There was then pending a petition for enforcement of National Board orders with the C.C.A. for the 6th Circuit, directing Prudential to bargain collectively with A.F. of L. as to agents in Toledo and Byron, Ohio. Prudential had a contract with International covering the other agents in Ohio. See matter of Prudential Insurance Company of America, 56 NLRB 1847, 56 NLRB 1859.

[5] The ruling in Bethlehem, infra, disposes of the claim of State Board as to the AAA proceeding. In Bethlehem there was no certification as to the precise employees and apparently no petition filed with the National Board seeking such certification. As to what is required under Section 9(c) as contrasted with the situation under Section 8(5) of the NLRA, see 2 Teller "Labor Disputes and Collective Bargaining" (1940) Section 337, citing cases.

"It is an unfair labor practice because violative of Section 8(5) of the Act (NLRA) for an employer to insist in every case that Board certification be made of the proper bargaining agencies. The employer's duty to commence bargaining is imposed even in the absence of certification, where the union presents satisfactory evidence of its possession of a majority of authorizations in an appropriate unit." 2 Teller, "Labor Disputes and Collective Bargaining," Section 326,

The current contract dated June 24, 1946, will expire October 1, 1948.

After the AAA designation and while the contract aforesaid was in effect, i. e., on November 27, 1944, and later Council and the International Union of Life Insurance Agents (herein called International), an unaffiliated labor organization, respectively filed petitions with the National Board seeking to carve out of the larger unit, state-wide units for the States of Illinois and Oklahoma, respectively, and for Indiana and Iowa, respectively. Petitioners contended that since plaintiff was not separately selected by agents in each of the states embraced in the comprehensive unit, the over-all unit was not appropriate. The National Board found this contention untenable [6] and that though the comprehensive unit was not nation-wide it approximated such unit and was as broad as the circumstances would permit. The National Board was not convinced that the units sought would promote more effective and stable labor relations than those already existing, citing as reasons

therefor the history of collective bargaining, the highly centralized and integrated character of Prudential activities, the similarity of interests and working conditions throughout Prudential operations; and refused to disregard a pattern of collective bargaining which it found had created and maintained harmony between Prudential and its employees. The National Board found precisely "the proposed state-wide units are inappropriate for the purposes of collective bargaining."

In the National Board proceedings, Council, United and Prudential were parties, Council contending for a state-wide unit, United and Prudential opposing. Prudential admitted its labor relations were subject to National Board jurisdiction.

While the foregoing was pending before the National Board, Council on January 11, 1945, filed its petition with the State Board seeking a state-wide unit as to the Agents in Pennsylvania. Notwithstanding the National Board decision, the State Board on January 15, 1946, by divided opinion [7]

pp. 872, 873. See NLRB v. Dahlstrom Metallic Door Co., 2 Cir., 1940, 112 F.2d 756, enforcing 11 NLRB 408 (1939).

Under Section 9(c) of the Act, the Board is empowered to certify either as a result of an election or without it. See Teller Op. Cit. supra, Section 333. The presentation by a labor organization of satisfactory evidence of a majority authorization in an appropriate bargaining unit dispenses with the necessity of an election. It is only where the evidence is unsatisfactory that an election is directed. Id. Section 9, NLRA, 49 Stat. 449 et seq., 29 U.S.C.A. § 159(c).

Inland Empire District Council et al. v. Millis et al., 1945, 325 U.S. 697, 65 S.Ct. 1316, 1321, 89 L.Ed. 1877 "Nothing in § 9(c) requires the Board to utilize the results of an election or forbids it to disregard them and utilize other suitable methods."

We do not know what procedure was followed by Council and International in seeking from the National Board a state-wide unit. We presume it was regular and legal.

See 61 NLRB 1269, supra, "But in these cases, as well as in proceedings involving other insurance companies, we have consistently pointed out and the unions have agreed that the ultimate appropriate unit is nation-wide."

[6] 61 NLRB 1269, the National Board stated inter alia, "We find no evidence in the record detracting from the CIO prima facie majority of status at time of execution of the 1943 agreement." Cf. Matter of Pennsylvania Labor Relations Board v. Prudential Insurance Company of America, Case No. 25, year of 1943, opinion of Pennsylvania Board.

[7] See footnote 2. The minority opinion contended the jurisdiction of the State Board was superseded by the decision of the National Board, supra, arguing inter alia, "It is thus perfectly clear that the National Labor Relations Board has taken jurisdiction of the identical dispute this Board is asked to pass upon, i.e., the propriety of a state-wide unit as against a national one and one in which the same parties were interested." And again, "The majority feel that our jurisdiction is not superseded because the National Board in the Consolidated cases was not asked to specifically pass upon the appropriateness of a state unit for the employees of Pennsylvania and because it has never certified a unit embracing said employees. The first reason is an assertion that before any adjudication of the question of State Unit v. National-unit involving the same parties is binding upon a State Board, the National Board must hear and pass upon 48 individual

concluded that a state-wide unit with appendages was appropriate and proceeded toward election and certification of a representative.

We proceed seriatim to a discussion of the questions presented.

■ The complaint asserts the action of State Board in proceeding to conduct an election and certify an exclusive bargaining agent infringes the rights of United under the United States Constitution, the NLRA, and the National Board decision, and unless enjoined will cause irreparable damage to United. Since the NLRA is an act regulating commerce and no averment as to jurisdictional amount is required,[8] a proper case is presented for consideration in the Federal Courts. Section 24(8), Judicial Code, 28 U.S.C.A. § 41(8); Food, Tobacco, Agricultural and Allied Workers, etc., v. Smiley et al., 3 Cir., 1947, 164 F. 2d 922; A. F. of L. v. Watson, 1946, 327 U.S. 582, 591, 66 S.Ct. 761, 90 L.Ed. 873; United Electrical, Radio & Mach. Workers v. International Brotherhood of Elec. Workers et al., 2 Cir., 1940, 115 F.2d 488, at page 490; Parker v. Brown, 1943, 317 U.S. 341, 349, 63 S.Ct. 307, 87 L.Ed. 315.

■ In view of the findings of the National Board, 61 NLRB 1269; and Polish National Alliance v. N. L. R. B., 1944, 322 U.S. 643, 646, 64 S.Ct. 1196, 88 L.Ed. 1509, as to labor relations affecting interstate commerce; and United States v. South-Eastern Underwriters Ass'n et al., 1944, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440,

holding insurance per se to be interstate commerce where the company conducts a substantial part of its business transactions across state lines and that such business is subject to regulation under the commerce clause, there can be no doubt that the labor relations of Prudential here in question are subject to the jurisdiction of the National Board.[9] See supra, 322 U.S. 643, 646, 64 S.Ct. 1196, 1198, 88 L.Ed. 1509, "that such are the substantial effects on interstate commerce of dislocating labor practices by insurance companies, was established before the Labor Board in at least thirteen comparable situations."

■ We are here presented with a case where the State Board in proceeding on the theory that a state-wide unit with appendages is appropriate is in direct conflict with the decision of the National Board.[10] Both the National and State Boards would be thereby asserting jursdiction and conflicting policies over Prudential's Agents in Pennsylvania. All of the cases have held that where this clash exists, under Art. VI, Cl. 2, of the United States Constitution, the doctrine of supersedure applies; the Federal ruling is paramount and must prevail.

This is an even stronger case than that presented in Bethlehem Steel Company v. New York State Labor Relations Board, 1947, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234, and in Allegheny Ludlum Steel Corp. v. Kelley et al., 1947, 330 U.S. 767, 67 S. Ct. 1026. There negative action in other

cases involving each state, a position too absurb to merit further consideration."

8 Cf. Section 24(1), Judicial Code, 28 U.S.C.A. Section 41(1), "The foregoing provisions as to sum or value of the matter in controversy shall not be construed to apply to any of the cases mentioned in the succeeding paragraphs of this section." Mulford v. Smith, 307 U.S. 38, 46, 59 S.Ct. 648, 83 L.Ed. 1092; Peyton v. Rwy. Express Agency, 316 U.S. 350, 62 S.Ct. 1171, 86 L.Ed. 1525; Tunstall v. Brotherhood of Firemen, 323 U.S. 210, 213, 65 S.Ct. 235, 89 L.Ed. 187.

9 See Prudential Insurance Co. v. Benjamin, 1946, 328 U.S. 408, at page 426, 429, 66 S.Ct. 1142, 90 L.Ed. 1342, 164 A.L.R. 476.

As to the McCarran Act, act March 9, 1945, c. 20, Section 4, 59 Stat. 33, 15 U.S.C.A. § 1014, "Nothing contained in

this chapter shall be construed to affect in any manner the application to the business of insurance of the Act of July 5, 1935, as amended, known as National Labor Relations Act [29 U.S.C.A. Section 151, 160] * * *." On insurance and interstate commerce, see Robert L. Stern, "The Commerce Clause and the National Economy." Vol. 59, Harv.L. Rev. p. 909 et seq.

10 See Leonard D. Boudin, "The Supreme Court and Labor," 47 Col.L.Rev., p. 979 at 992–994; Harry A. Millis and Harold A. Katz, "A Decade of State Labor Legislation-1937-1947", Univ. of Chicago L.Rev., Vol. 15, Winter 1948, No. 2, p. 282 at 289; see Note Id. at p. 362–370, "Overlapping Federal and State Regulation of Labor Relations"; see Note, "The State Labor Relations Acts," 51 Harv.L.Rev. 722–736.

cases was held to be an exercise of jurisdiction and assertion of a policy; here the National Board had ruled as to a comprehensive unit embracing Pennsylvania Agents, and squarely against appropriateness of a state-wide unit. Bethlehem held that in the face of the national policy, the State Court in issuing an order to enforce a subpoena duces tecum, issued by the State Board in a proceeding for the certification of a collective bargaining representative under the State Act was asserting a conflicting policy beyond its power; in Ludlum the action of the State court in dismissing the employer's suit for declaratory judgment as to lack of jurisdiction of the State Board was held to be error.

In Bethlehem the State Board contended that though the National Board's power was paramount it was not exclusive, and that the State power may be exercised until the Federal power is actually exercised as to the particular employees. This contention was rejected. Said the Court, 330 U.S. at page 772, 67 S.Ct. at page 1029, "Our question is primarily one of the construction to be put on the Federal Act." Again, 330 U.S. at page 773, 67 S.Ct. at page 1030, " * * * in Allen-Bradley Local v. Board, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154, where we held that employee and union conduct over which no direct or delegated federal power was exercised by the National Labor Relations Act is left open to regulation by the state. However, the power of the state may not so deal with matters left to its control as to stand 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Hill v. Florida, 325 U.S. 538, 542, 165 S.Ct. 1373, 1375, 89 L. Ed. 1782. Cf. Maurer v. Hamilton, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969, 135 A. L.R. 1347."

Bethlehem held that New York was not permitted to use its police power because the failure of the National Labor Relations Board "affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute." Id., 330 U.S. at page 774, 67 S.Ct. at page 1030.

And again, *"both governments have laid hold of the same relationship for regulation, and it involves the same employers and the same employees.*[11] Each has delegated to an administrative authority a wide discretion in applying this plan of regulation to specific cases, and they are governed by somewhat different standards. Thus, if both laws are upheld, two administrative bodies are asserting a discretionary control over the same subject matter, conducting hearings, supervising elections and determining appropriate units for bargaining in the same plant. They might come out with the same determination, or they might come out with conflicting ones as they have in the past * * * *But the power to decide a matter can hardly be made dependent on the way it is decided.* As said by Mr. Justice Holmes for the Court, 'When Congress has taken the particular subject-matter in hand, coincidence is as ineffective as opposition * * *.' Charleston & W. C. R. Co. v. Varnville Furniture Co., 237 U.S. 597, 604, 35 S.Ct. 715, 716, 717, 59 L.Ed. 1137, Ann.Cas. 1916D, 333, * * * *if the two boards attempt to exercise a concurrent jurisdiction to decide the appropriate unit of representation, action by one necessarily denies the discretion of the other. The second to act either must follow the first, which would make its action useless and vain, or depart from it, which would produce a mischievous conflict. The State argues for a rule that would enable it to act until the federal board has acted in the same case. But we do not think that a case by case test of federal supremacy is permissible here. The federal board has jurisdiction of the industry in which these particular employers are engaged and has asserted control of their labor relations in general. It asserts, and rightfully so * * * its power to decide whether these foremen may constitute themselves a bargaining unit. We do not believe this leaves room for the operation of the State authority asserted."* Id., 330 U.S. at pages 775, 776, 67 S.Ct. at page 1031.

The first case where the Supreme Court met the problem of federal supersedure of State law in the National Labor Relations

---

[11] Italics supplied throughout this opinion.

Act v. State Act field was Allen-Bradley Local, etc., v. Wisconsin Employment Relations Board, 1942, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154. The Supreme Court uanimously upheld the validity of certain orders issued by the Wisconsin ·Labor Relations Board against the union and its employees on the theory that the Wagner Act, dealing only with employer unfair labor practices did not occupy the field of employee unfair labor practices. The Wisconsin Court, 1941, 237 Wis. 164, 295 N. W. 791, had generalized, "There can be no conflict between the acts until they are applied to the same labor dispute." [315 U.S. 740, 62 S.Ct. 823.] The Supreme Court set that contention to one side and decided only the precise question before it, holding that Congress left open an area for State control; and again, "if the order of the state Board * * * caused a forfeiture of collective bargaining rights, a distinctly different question would arise."

In Hill v. Florida, 1945, 325 U.S. 538, 65 S.Ct. 1373, 1375, 89 L.Ed. 1782, a State deprivation of collective bargaining rights was held invalid "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.". Said Mr. Justice Black, 325 U.S. at page 539, 65 S.Ct. at page 1374, 89 L.Ed. 1782, "That question which we so distinctly reserved in the Wisconsin case has now arisen in this case." And again, 325 U.S. at page 541, 65 S.Ct. at page 1374, 89 L.Ed. 1782, "The declared purpose of the Wagner Act, as shown in its first section, is to encourage collective bargaining, and to protect the 'full freedom' of workers in the selection of bargaining representatives of their own choice. To this end Congress made it illegal for an employer to interfere with, restrain or coerce employees in selecting their representatives. *Congress attached no conditions whatsoever to their freedom of choice in this respect.* Their own best judgment, not that of someone else, was to be their guide. * * *" See Id., 325 U.S. at page 542, 65 S.Ct. at page 1375, 89 L.Ed. 1782, *the Board properly held that "Congress did not intend to . subject the 'full freedom' of employees to the eroding process of 'varied and perhaps conflicting*

*provisions of State enactments.'"* And again, "*The collective bargaining which Congress has authorized contemplates two parties free to bargain, and cannot thus be frustrated by state legislation.*"

See Id., 325 U.S. at page 543, 65 S.Ct. at page 1375, 89 L.Ed. 1782, "Our holding is that the· *National Labor Relations Act* and Sections 4 and 6 of the *Florida Act* as here applied cannot 'move freely within the orbits of their respective purposes without impinging upon one another'."

See Mr. Chief Justice Stone concurring Id., 325 U.S. 544, at page 545, 65 S.Ct. at page 1376, 89 L. Ed. 1782, "*The right conferred on employees to bargain collectively through a representative of their own choosing is the foundation of the National Labor Relations Act. Without that right, or if it were restricted by state action, the Act as drawn would have little scope for operation. The fact that the National Labor Relations Act imposes sanctions on the employer alone does not mean that it did not, by § 7, confer the right on employees as against others as well as the employer to make an uninhibited choice of their bargaining agents.* Cf. United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788. *Section 7 confers the right of choice generally on employees and not merely as against the employer.*" [12]

An interesting question is raised by the foregoing as to whether the terms of the NLRA per se exclude jurisdiction by the State Board as to the labor relations of a company engaged in interstate commerce. See Mr. Justice Jackson, 330 U.S. 767, at page 776, 67 S.Ct. 1026, at page 1032, and cf. the separate opinion of Mr. Justice Frankfurter at pages 777, 778 of 330 U.S., at page 1032 of 67 S.Ct., "But the Court's opinion does not, as I read it, have that restricted scope, based on the individual circumstances before us. Apart from the suggestion that the National Board's declination of jurisdiction 'in certain types of cases, for budgetary or other reasons' might leave room for the State in those situations, the Court's opinion carries at least overtones of meaning that, regardless of the consent of the National Board, New York is excluded from enforcing rights of collec-

---

[12] Contra cases infra footnote 15.

tive bargaining in all industries within its borders as to which Congress has granted opportunity to invoke the authority of the National Board."

▮ As to matters in the federal domain Congress may, if it chooses, take unto itself all regulatory authority over them, share the tasks with the States, or adopt as federal policy the State scheme of regulation. The question in each case is what the purpose of Congress was. "* * * *the state policy may produce a result in-consistent with the objectives of the feder-al statute.* Hill v. Florida, 325 U.S. 538, 65 S.Ct. 1373, 89 L.Ed. 1782. *It is often a perplexing question whether Congress has precluded state action or by the choice of selective regulatory measures has left the police power of the States undisturbed except as the state and federal regulations collide. * * * *"* And again, *"We recently noted that Congress can act so unequivocally as to make clear that it intends no regulation except its own.* Bethlehem Steel Corp. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026 [91 L.Ed. 1234]. In these fields Congress has done just that * * *. Thus, by

eliminating dual regulations and substituting regulation by one agency Congress sought to achieve "fair and uniform business practice'. * * * *."

"* * * The test, therefore, is whether the matter on which the State asserts the right to act is in any way regulated by the Federal Act. If it is, the federal scheme prevails though it is a more modest, less pervasive regulatory plan than that of the State * * *. The provisions of Illinois law on those subjects must therefore give way by virtue of the Supremacy Clause. U.S.Const. Art. VI, Cl. 2." Rice et al. v. Santa Fe Elevator Corp., 1947, 331 U.S. 218, 67 S.Ct. 1146, 1152, 1155, 91 L.Ed. 1447.

In the foregoing connection see Pittsburgh Railways Co. Substation Operators & Maintenance Employees' Case, 1947, 357 Pa. 379, 54 A.2d 891, where the Supreme Court of Pennsylvania specifically ruled that the Pennsylvania Labor Relations Board does not have concurrent jurisdiction with the National Board in representation and certification proceedings in situations involving interstate commerce.[13] And further, 357 Pa. at page 386,

[13] See footnote 10, particularly Vol. 15, Univ. of Chicago L.Rev. supra, at p. 368–370; La Crosse Tel. Corp. v. Wisconsin Employment Relations Board et al., 1947, 251 Wis. 583, 30 N.W.2d 241, 244. Employer engaged in interstate commerce. Petition filed with National Board for certification of representative withdrawn and petition filed with the State Board and certification made. The Wisconsin Court held the National Board is not obliged to accept jurisdiction or exercise its power on every petition and complaint filed with it. Further if no proceedings are had under the National Labor Relations Act, no conflict of jurisdiction can arise. The Court approved the action of the State Board ruling contrary to the decision in the Pittsburgh Rwys., supra, stating, "Not every labor dispute arises to such dignity that it impedes and obstructs interstate commerce although the employer may be engaged in what may be defined as interstate commerce." The Court distinguishes the case of International Union, etc., v. Wisconsin Employment Relations Board, 250 Wis. 550, 27 N.W.2d 875, 28 N.W.2d 254, from Bethlehem, supra, on the ground that no application had been made to the National Board to exercise

its jurisdiction as to the particular labor dispute involved.

International Union, etc., v. Wisconsin Employment Relations Board, 1947, 250 Wis. 550, 27 N.W.2d 875, 28 N.W.2d 254, involved was (a) planned concerted stoppage of work other than a strike and (b) coercing and intimidating employees while collective bargaining was in process as to the terms of a new contract, the previous contract having expired. The Court held that the right to act as a collective bargaining unit or representative was not involved and that Bethlehem decided where there was a conflict between National and State Boards the State Board was barred from taking any action at all. The Wisconsin Court found the matter under consideration to be a question of unfair labor practices of employees not covered by the National Act, and that the ruling of the State Board did not interfere with collective bargaining rights. Christoffel et al. v. Wisconsin Employment Relations Board et al., 1943, 243 Wis. 332, 10 N.W.2d 197, 199, certiorari denied 1943, 320 U.S. 776, 64 S.Ct. 90, 88 L.Ed. 466. "* * * there was no conflict of jurisdiction because proceedings between the interested adverse parties had been before the national board involving matters

54 A.2d at page 896, *"The criterion to determine validity of the exercise of state power is not whether the agency administering federal law has acted upon the relationship in a given case; rather, it is whether Congress has asserted its power to regulate that relationship. The Pennsylvania Labor Relations Board could not constitutionally entertain the petition for determination of the bargaining unit and certification of a bargaining agent. In so doing, it was acting upon subject matter, regarding which Congress had asserted its power of regulation and jurisdiction over which had properly been delegated to the National Labor Relations Board."*

█ The Pennsylvania Supreme Court's definition of the authority of the State Board is of course binding upon this court under Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Food, Tobacco, Agricultural and Allied Workers, etc., v. Smiley et al., supra, 3 Cir., 164 F.2d 922; Aero Mayflower Transit Co. v. Board of Railroad Commissioners of Montana, 1947, 332 U. S. 495, 68 S.Ct. 167.

Linde Air Products Company v. Johnson, D.C., 77 F.Supp. 656, not yet officially reported. Where a company was engaged in interstate commerce the union petition for investigation and certification of a collective bargaining representative was dismissed by the National Board because of failure to comply with Section 9(f) (g) (h) of the Labor Management Relations Act (failure to file non-communist affidavits). A petition was then filed with the State Board. The federal district court enjoined the State Board from proceeding and from assuming any jurisdiction with respect to investigation and certification upon the theory that there was no concurrent jurisdiction and that Congress had preempted the field.

We do not, however, herein have to decide whether the terms of the Act of themselves preclude State jurisdiction as to the labor relations of a company engaged in interstate commerce or whose business affects interstate commerce.[14]

It was of course always true that even those State Boards which contended they had concurrent jurisdiction withdrew in the face of the National Labor Relations Board, which had superior rights under the commerce and supremacy clauses of the Constitution. Until recently however, those State Boards acted when the National Labor Relations Board did not.[15] In

---

not in issue before the state board." International Brotherhood of Electrical Workers, etc., v. Wisconsin Employment Relations Board et al., 1944, 245 Wis. 532, 15 N.W.2d 823, 826, the National Board found as a fact that the union was an appropriate bargaining agency but did not make any certification—rather it dismissed the proceedings. Wisconsin Court held "in order to establish the union as the bargaining agent * * * an election must be held and the result duly certified as required by the act. It is the certificate provided for under section 9(c) or an order under the provisions of section 10(c) that vitalizes the proceeding before the board." And again, "If in a particular case the National Labor Relations Board takes jurisdiction, of course its determination is superior in legal effect to that of the determination of the state board, if there is a conflict. In this case the National Board having declined to take jurisdiction, there is no conflict in policy or method. * * *" In view of Bethlehem and the provisions of the Labor Management Relations Act, hereinafter discussed, our comment on this case is that jurisdiction would have to be ceded by the National Board to the State Board, and furthermore for our present purposes this case is not in point because in our case we do not have a conflict.

James v. Marinship Corp. et al., 25 Cal. 2d 721, 155 P.2d 329, 160 A.L.R. 900, was a picketing case; American Federation of Labor et al. v. Reilly et al., 1944, 113 Colo. 90, 155 P.2d 145, 150, 151, 160 A.L.R. 873, involves the question of constitutionality of the Colorado Labor Peace Act. "* * * conflicts between federal and state enactments, or orders arising therefrom * * * should be resolved only upon 'concrete and specific issues raised by actual cases'." This case must be read in the light of the Bethlehem decision.

[14] See footnote 10.

[15] See cases cited footnote 13, supra.

The leading cases in the State Courts up to the time of the Bethlehem decision were Wisconsin Labor Relations Board v. Fred Rueping Leather Co., 1938, 228 Wis. 473, 488, 279 N.W. 673, 679, 681, 117 A.L.R. 398, "It seems to us a violent assumption that * * * Congress could have intended to exclude state legislation in the field, except so far as it conflicted

order to do so now it would appear they may do so only when the National Board cedes jurisdiction to them, and the State Act and the decisions thereunder are not in conflict with the National Act. There is no such averment before us.[16]

■ What the National Board denied to Council and International as a matter of policy, Council sought from the State Board under the State Act. Regardless of the outcome of the election, the State Board in recognizing the appropriateness of a state-wide unit with appendages for Prudential agents has already announced a

policy in conflict with that of the National Board. This was beyond its power under Bethlehem; Pittsburgh Railways, and Erie R. Co. v. Tompkins; Food, Tobacco, Agricultural and Allied Workers, etc., v. Smiley et al., and Linde Air Products Company v. Johnson etc., all supra.

■ In view of the foregoing, we have no difficulty in disposing of the contention specially and earnestly urged by Council and argued by the State Board that the doctrine of primary jurisdiction and exhaustion of administrative remedies apply. We do not agree.[17] The State Board

---

with the federal act"; and again, "In case there is conflict in a matter properly within the scope of the national act, the state must yield."

Davega City Radio, Inc., v. State Labor Relations Board, 1939, 281 N.Y. 13, 24, 22 N.E.2d 145, 149, "We reach the conclusion, * * * that the State * * * Board may enforce the State act at least until such time as it is ousted by the exercise by the National Labor Relations Board of its jurisdiction under the National act."

Allen-Bradley Local, etc., v. Wisconsin Employment Relations Board, 1941, 237 Wis. 164, 295 N.W. 791, at page 795, "The power of the Board to certify * * * representatives for collective bargaining is not involved in this proceeding. It is apparent, however, from a consideration of the provisions of section 9 that the right to determine and certify * * * who shall represent an appropriate unit of employees for the purpose of collective bargaining is vested exclusively in the (National) board." A. F. of L. v. N.L.R.B., 1940, 308 U.S. 401, 60 S.Ct. 300, 305, 84 L.Ed. 347.

16 Although some states had working agreements as to jurisdiction with the National Labor Relations Board, e.g., New York and Wisconsin, the Pennsylvania Board had no such agreement. A comparison of the provisions of Section 10(a), Labor Management Relations Act, H.R. 3020, 80th Congress, 1st Sess., Pub. Law No. 101, 1947, 29 U.S.C.A. 160(a), with Section 10(a) of the National Labor Relations Act, 49 Stat. 453 (1935), 29 U.S.C.A. Section 160(a) (1947) follows. Section 10(a) of the National Labor Relations Act, parts· omitted are in brackets—the additions made by the Labor Management Relations Act are in italics: "The Board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair labor practice (listed in section 8) . affecting

commerce. This power shall [be exclusive, and shall] not be affected by any other means of adjustment or prevention that has been or may be established by agreement, [code] law, or otherwise: *Provided, That the Board is empowered by agreement with any agency of any State or Territory to cede to such agency jurisdiction over any cases in any industry (other than mining, manufacturing, communications, and transportation except where predominantly local in character) even though such cases may involve labor disputes affecting commerce, unless the provision of the State or Territorial statute applicable to the determination of such cases by such agency is inconsistent with the corresponding provision of this act or has received a construction inconsistent therewith.*"

See Note Univ. of Chicago L.Rev., supra Note 10 at p. 370 and Note 51 Harv.L.Rev. supra at p. 722, "Regardless of the practical advantages of such a view, it seems unlikely that the jurisdictions of the State and National Boards will be held * * * concurrent." Only by an amendment to the Wagner Act, giving the State boards power to apply state laws if the National Board has not acted, and excluding any supersedure of state action until there is an actual conflict of orders or until the national board has taken jurisdiction over the particular case can "concurrent jurisdiction be assured."

17 See Note "Primary Jurisdiction—Effect of Administrative Remedies on the Jurisdiction of Courts," 51 Harv.L.Rev. 1251–1267; Myers et al. v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Newport News Shipbuilding & Drydock Co. v. Schauffler et al., 1938, 303 U.S. 54, 58 S.Ct. 466, 82 L.Ed. 646. The Myers case considers both phases of the primary jurisdiction rule—jurisdiction and exhaustion of remedies—and decides the district court had no jurisdiction to interfere with

not only lacks primary jurisdiction but under the circumstances here present has no jurisdiction at all to proceed in the face of a contrary national policy.[18]

Cases have been cited which hold that certification, and the steps leading thereto, is not a final order. We of course agree as to the National Act.[19]

Next cases are cited to the effect that the District Court cannot interfere with certification proceedings before the National Board.[20] We agree.

Here however is a clear legal question on which the State Board has no special competence and upon which it has misapplied the law to the detriment of plain-

---

certification proceedings and that the Circuit Court could not interfere until appeal was taken from an order by the National Board. Village of Euclid v. Ambler Realty Co., 1926, 272 U.S. 365, 47 S.Ct. 114, 71 L. Ed. 303, 54 A.L.R. 1016; Pennsylvania R. Co. v. Puritan Coal Co., 1915, 237 U.S. 121, at page 134, 35 S.Ct. 484, 59 L.Ed. 867; Baltimore & O. R. Co. v. Brady, 1933, 288 U.S. 448, at page 457, 53 S.Ct. 441, 77 L.Ed. 888; Galveston, H. & S. A. Ry. Co. v. Wallace, 1912, 223 U.S. 481, at page 490, 32 S.Ct. 205, 56 L.Ed. 516; Shields v. Utah Idaho Central R. Co., 1938, 306 U.S. 177, at page 183, 184, 59 S.Ct. 160, 83 L.Ed. 111; A. F. of L. v. N.L.R.B., 1940, 308 U.S. 401, at page 412, 60 S.Ct. 300, 84 L.Ed. 347; Buder v. First Nat. Bank in St. Louis, 8 Cir., 1927, 16 F.2d 990, at page 992, 993, certiorari denied 274 U.S. 743, 47 S.Ct. 588, 71 L.Ed. 1321; Skinner & Eddy Corp. v. United States et al., 1919, 249 U.S. 557, 562, 39 S.Ct. 375, 63 L.Ed. 772; Work v. Louisiana, 1925, 269 U.S. 250, 46 S.Ct. 92, 70 L.Ed. 239; Varney v. Warehime, 6 Cir., 1945, 147 F.2d 238, at page 244. "Here it is claimed that the administrative agency had no authority to proceed under the statute. Under such circumstances, appellees were not required to resort to the regulations for correctness of the errors and irregularities, if any, of the administrator before bringing suit. Ogden City v. Armstrong, 168 U.S. 224, 241, 18 S.Ct. 98, 42 L.Ed. 444." Gonzales v. Williams, 1904, 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317; United States v. Sing Tuck, 1904, 194 U.S. 161, 24 S.Ct. 621, 48 L.Ed. 917. The Pennsylvania Supreme Court held the State Board may be enjoined from holding any proceeding whatever where it is without jurisdiction as a matter of law. Western Pennsylvania Hospital et al. v. Lichliter et al., 340 Pa. 382, 17 A.2d 206, 132 A.L.R. 1146.

The reasons for the rule (a) special competency, (b) more complete relief, (c) uniformity, (d) orderly procedure, (e) avoid interference with administrative and legislative regulation.

The reason for the rule conditions its development. Exhaustion of remedy is not required if application to the com-

mission would be futile. Proctor & Gamble Distributing Co. v. Sherman, D.C. S.D.N.Y., 1924, 2 F.2d 165.

18 Sweeney et al. v. State Board of Public Assistance, D.C.M.D.Pa., 36 F. Supp. 973, 974, certiorari denied 314 U.S. 611, 62 S.Ct. 74, 86 L.Ed. 491, " * * * where * * * constitutionality of a board regulation is attacked, a three-judge court does not need to be convened unless the complaint also attacks the constitutionality of the statute pursuant to which the administrative board has formulated its order." See Food, Tobacco, Agricultural and Allied Workers, etc., v. Smiley et al., D.C., 74 F.Supp. 823, supra. Plaintiff does not challenge constitutionality of the State Labor Act. What it does challenge is the right of the State Board to assume jurisdiction over their dispute.

And again Id., 74 F.Supp. 823, at page 827, "if the State Board is without jurisdiction it would have no authority to conduct an investigation, hold an election or make an order certifying a collective bargaining agent. * * *" Accord Id., 3 Cir., 164 F.2d 922; See Bethlehem, Pittsburgh Rwys. and Linde, etc., supra.

19 Inland Empire District Council, etc., v. Millis et al., 1945, 325 U.S. 697, 65 S.Ct. 1316, 1321, 89 L.Ed. 1877, "An election, when held, is only a preliminary determination of fact. * * * A direction of election is but an intermediate step in the investigation, with certification as the final and effective action."

Certification not final order; in fact, it is no order at all. No appeal may be made from certification by the National Board. Jurisdiction of the National Board is exclusive until order made by the National Board directing action on the part of the employer. It is then subject to judicial review under Section 10(a). United Employees Assoc. v. N.L. R.B., 3 Cir., 1938, 96 F.2d 875, 876; A.F. of L. v. N.L.R.B., 1940, 308 U.S. 401, 60 S.Ct. 300, 304, 84 L.Ed. 347; N.L.R.B. v. Botany Worsted Mills, 3 Cir., 1943, 133 F.2d 876, 882.

20 See Myers v. Bethlehem Shipbuilding Corp., supra; Newport News Shipbuilding, etc., v. Schauffler, supra.

tiff's rights under the contract, the National Labor Relations Act and the United States Constitution; tending to create labor relations disharmony with the possible resultant damaging effects on interstate commerce. The Federal District Court has jurisdiction and should assert it to prevent such interference and without awaiting the outcome of an election. Regardless of the outcome of the election the State Board is without power or jurisdiction to declare under the circumstances here present that a state-wide unit with appendages is appropriate and to proceed to hold elections pursuant thereto.

Council and the State Board rely heavily upon the case of Myers v. Bethlehem Shipbuilding Corp., supra. That case is squarely against them. The very fact that the Supreme Court of the United States held that the jurisdiction of the National Board was exclusive so as to preclude any interference therewith by the Federal District Court, a fortiori proves that the State Board has no more right than the Federal District Court to interfere with the exclusive proceeding of the National Board and their attempt to do so should be enjoined.

The adequacy of the legal remedy is to be determined by considering the remedy available in the Federal Court, not that granted by the State statutes and available in State Courts.[21]

We think the averments in the complaint as to irreparable injury are sufficient under the decision in A. F. of L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873.

The purpose of the National Act and that of the Labor Management Relations Act is to prevent interference with interstate commerce, to promote labor harmony. A right under the Federal Constitution, the National Labor Relations Act, the Labor Management Relations Act, should be protected from molestation, interference and obstruction. The action of the State Board and Council interfere with that right. The result cannot be measured in money damages.[22] Such action is beyond the power of Council and the State Board.

Furthermore, as to the prayer for declaratory judgment an averment as to irreparable injury is not required.[23]

We are fully cognizant of the cases which hold that the Federal Court should be reluctant and hesitant to interfere with

[21] 1 Moore's Federal Practice pp. 202–207, 208 et seq.

See Simkins Federal Practice, Revised Ed., Section 371, p. 268, " * * * the rule is thoroughly settled that to oust the jurisdiction of a Court of equity the remedy at law must be such as is known to the Federal courts, and it must be a remedy at law in the Federal courts." Henrietta Mills v. Rutherford County, N. C., 1930, 281 U.S. 121, 50 S.Ct. 270, 74 L. Ed. 737; Scott v. Neely, 1891, 140 U.S. 106, 11 S.Ct. 712, 35 L.Ed. 358; Smyth v. Ames, 1898, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819; A. F. of L. v. Watson, 1946, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873, and Di Giovanni v. Camden Fire Ins. Assoc., 1935, 296 U.S. 64, at page 69, 56 S. Ct. 1, 80 L.Ed. 47.

[22] " * * * it cannot be maintained that the exertion of federal power must await the disruption of that commerce. Congress was entitled to provide reasonable preventive measures and that was the object of the National Labor Relations Act." N.L.R.B. v. Fainblatt, 1939, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014,

citing Consolidated Edison Co. v. N.L.R.B., 1939, 305 U.S. 197, 222, 59 S.Ct. 206, 213, 83 L.Ed. 126; and again Polish Nat. Alliance v. National Labor Relations Board, 322 U.S. 643, at page 647, 64 S.Ct. 1196, 1198, 88 L.Ed. 1509, "By that Act, Congress in order to protect interstate commerce from adverse effects of labor disputes has undertaken to regulate all conduct having such consequences that constitutionally it can regulate. * * *" See "The Commerce Clause and the National Economy 1933–1946," Robert L. Stern, Vol. 59 Harv.L.Rev., p. 645 at 674.

[23] See Note, "Need for injunctive Relief as Prerequisite for Granting Declaratory Judgment," Yale L.J. Vol. 56, Nov. 1946, No. 1, p. 139; Borchard Declaratory Judgments, 2nd Ed. (1941), 195, 365; Nashville, Chattanooga & St. L. Ry. Co. v. Wallace, 1933, 288 U.S. 249, 264, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191; Note "Declaratory Judgments to Forestall Jurisdiction of Adjudicative Agencies", Yale Law J. Vol. 56, p. 1449–1457.

proceedings of State administrative agencies.[24]

We respect the able and distinguished counsel for the State Board and his scholarly briefs, but we do not here agree with the conclusions stated therein.

What answer may be made and evidence offered we do not know, and therefore here and now make no final decision until opportunity is afforded to answer and offer testimony.

We do, however, here decide that the motion to dismiss be denied.[25] An order to that effect will be handed down this date. Meanwhile the temporary injunction will be continued.

N. B.—The United States Supreme Court granted review in La Crosse Telephone Corp. v. Wisconsin Employment Relations Board, supra, footnote 13; jurisdiction postponed. 16 L.W. 3311.

The United States Supreme Court granted certiorari in International Union, etc., v. Wisconsin Employment Relations Board, supra footnote 13. 16 L.W. 3281.

---

24 But see A.F. of L. v. Watson, 327 U.S. 582, at page 595, 66 S.Ct. 761, 90 L.Ed. 873. Cf. Burford v. Sun Oil Co., 1943, 319 U.S. 315, 63 S.Ct. 1098, 1106, 1107, 87 L.Ed. 1424; Railroad Commission of Texas et al. v. Pullman Co. et al., 1941, 312 U.S. 496, 61 S.Ct. 643, 645, 85 L.Ed. 971. See also Section 267, Judicial Code, 28 U.S.C.A. 384.

25 See Aralac, Inc., v. Hat Corp. of America, 3 Cir., 1948, 166 F.2d 286.